FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAM FRANCIS FOUNDATION; ESTATE OF ROBERT GRAHAM; CHUCK CLOSE; LADDIE JOHN DILL, *Plaintiffs-Appellants*, <br><br> v. <br><br> CHRISTIES, INC., a New York corporation, *Defendant-Appellee.* | No. 12-56067 <br><br> D.C. No. 2:11-cv-08605-MWF-FFM |
| SAM FRANCIS FOUNDATION; ESTATE OF ROBERT GRAHAM; CHUCK CLOSE; LADDIE JOHN DILL, *Plaintiffs-Appellants*, <br><br> v. <br><br> EBAY, INC., a Delaware corporation, *Defendant-Appellee.* | No. 12-56068 <br><br> D.C. No. 2:11-cv-08622-MWF-PLA |
| ESTATE OF ROBERT GRAHAM; CHUCK CLOSE; LADDIE JOHN DILL, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*, | No. 12-56077 <br><br> D.C. No. 2:11-cv-08604-MWF-FFM |

2        SAM FRANCIS FOUND. v. CHRISTIES

| | |
|---|---|
| v.<br><br>SOTHEBY'S, INC., a New York corporation,<br><br>*Defendant-Appellee.* | OPINION |

Appeals from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted En Banc
December 16, 2014—Pasadena, California

Filed May 5, 2015

Before:  Sidney R. Thomas, Chief Judge, and Harry
Pregerson,  Stephen Reinhardt, Diarmuid F. O'Scannlain,
Barry G. Silverman, Susan P. Graber, M. Margaret
McKeown,  Marsha S. Berzon, Consuelo M. Callahan,
Carlos T. Bea, and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Graber;
Partial Concurrence and Partial Dissent by
Judge Reinhardt;
Concurrence by Judge Berzon

## SUMMARY[*]

### California's Resale Royalty Act

The en banc court held that a clause of California's Resale Royalty Act regulating sales of fine art outside the state of California facially violates the dormant Commerce Clause, but the clause is severable from the remainder of the Act.

Artists and the estates of artists alleged that Christies, Inc., EBay, Inc., and Sotheby's, Inc., violated the Act by failing to pay mandatory royalties on sales of fine art. The Act requires the seller of fine art to pay the artist a five percent royalty if "the seller resides in California or the sale takes place in California." Cal. Civ. Code § 986(a). The en banc court held that the Act's clause regulating sales outside the state of California facially violated the "dormant" Commerce Clause but that the offending provision was severable from the remainder of the Act. Because the district court held that the Act fell in its entirety, the district court did not reach defendants' alternative arguments, and the en banc court returned the case to the three-judge panel for its consideration of the remaining issues.

Judge Reinhardt concurred with the majority's conclusion that under the Supreme Court's dormant Commerce Clause jurisprudence, the out-of-state regulation of out-of-state entities was unconstitutional, and therefore the auction house defendants could not be subjected to the Act's obligations required of them in connection with sales that take place

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

outside of California. Judge Reinhardt dissented from the majority's extension of the dormant Commerce Clause to declare a substantial portion of the Act unconstitutional.

Judge Berzon, joined by Judge Pregerson, concurred in part, and would hold the Act unconstitutional as applied to out-of-state art sales conducted by out-of-state agents, and go no further. Judge Berzon stated that the majority opinion unnecessarily decides that the Act is unconstitutional as applied to out-of-state art sales by California residents.

---

## COUNSEL

Eric M. George (argued) and Ira Bibbero, Browne George Ross LLP, and Irving H. Greines and Gary D. Rowe, Greines, Martin, Stein & Richland LLP, Los Angeles, California, for Plaintiffs-Appellants.

Deanne E. Maynard (argued), Morrison & Foerster LLP, Washington, D.C., and Paul T. Friedman, Morrison & Foerster LLP, San Francisco, California; John C. Dwyer, Angela L. Dunning, and Joshua M. Siegel, Cooley LLP, Palo Alto, California; Michael G. Rhodes, San Francisco, California; Jason D. Russell, Hillary A. Hamilton, Allon Kedem, Michael McIntosh, Skadden, Arps, Slate, Meagher & Flom, LLP , Los Angeles, California; and Steven A. Reiss, Howard B. Comet, Weil Gotshal & Manges LLP, New York, New York, for Defendants-Appellees.

Aimee Feinberg (argued), Deputy Solicitor General, Gavin G. McCabe, Supervising Deputy Attorney General, Kamala D. Harris, Attorney General of California, Edward C. DuMont, Solicitor General, Mark J. Breckler, Chief Assistant Attorney

General, and Robert W. Byrne, Senior Assistant Attorney General, San Francisco, California, for Amicus Curiae State of California.

Steven A. Hirsch and Katherine M. Lovett, Keker & Van Nest LLP, San Francisco, California; Craig A. Pinedo, PinedoLaw, San Francisco, California, and Jesse H. Choper, University of California School of Law (Boalt), Berkeley, California; Michael Tenenbaum, Santa Monica, California; Greg Christianson and Jeremy Esterkin, Morgan Lewis & Bockius LLP, and Melissa Grant and Arnab Banerjee, Capstone Law APC, Los Angeles, California, for Amici Curiae.

---

## OPINION

GRABER, Circuit Judge:

California's Resale Royalty Act requires the seller of fine art to pay the artist a five percent royalty if "the seller resides in California or the sale takes place in California." Cal. Civ. Code § 986(a). Plaintiffs in these consolidated appeals are artists and the estates of artists. Sitting en banc, we address Plaintiffs' allegation that Defendants—two auction houses and an online retailer—violated the Act by failing to pay mandatory royalties on sales of fine art. Reviewing de novo the district court's order dismissing this action, *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013), we hold that the Act's clause regulating sales outside the state of California facially violates the "dormant" Commerce Clause but that the offending provision is severable from the remainder of the Act. We return the case to the three-judge

panel for its consideration of the additional issues raised by the parties on appeal.

A. *Background*

The Act requires that, "[w]henever a work of fine art is sold and the seller resides in California or the sale takes place in California, the seller or the seller's agent shall pay to the artist of such work of fine art or to such artist's agent 5 percent of the amount of such sale." Cal. Civ. Code § 986(a). The artist's right to the royalty may not be waived or reduced by contract. *Id.* The Act defines "fine art" as "an original painting, sculpture, or drawing, or an original work of art in glass." *Id.* § 986(c)(2). The Act exempts some sales, including those for less than $1,000 and those involving an artist who died before 1983. *Id.* § 986(b).

When art is sold by an agent, "the agent shall withhold 5 percent of the amount of the sale, locate the artist and pay the artist." *Id.* § 986(a)(1). If the seller or the seller's agent cannot locate the artist within 90 days, the seller or agent must transfer the royalty to the California Arts Council. *Id.* § 986(a)(2). In that event, the Arts Council must attempt to locate the artist and deliver the royalty. *Id.* § 986(a)(5). If the artist still has not been located after seven years, the Arts Council may use the funds for "acquiring fine art." *Id.* If the seller or the seller's agent fails to comply with the Act, the artist or the artist's heirs may sue the seller or the seller's agent for the royalty plus reasonable attorney fees. *Id.* § 986(a)(3), (7).

Invoking the royalty provision, Plaintiffs brought three separate class actions against Defendants Sotheby's, Inc., Christie's, Inc., and eBay, Inc., alleging that Defendants,

acting as agents of sellers of fine art, failed to comply with the Act's requirements. Plaintiffs allege that some sales took place in California and that other sales took place outside California but on behalf of a seller who is a resident of California. Defendants moved to dismiss the cases arguing, among other things, that the Act violates the dormant Commerce Clause.

The district court granted Defendants' motions to dismiss. The court held that the Act's regulation of sales outside California is an impermissible regulation of wholly out-of-state conduct, in violation of the dormant Commerce Clause. The court next held that the entire Act must be stricken as unconstitutional, because the invalid portion of the Act could not be severed. The court declined to reach the parties' alternative arguments, such as Defendants' argument that the Act is preempted by federal copyright laws and Defendant eBay's argument that it is neither a seller nor a seller's agent.

Plaintiffs timely appealed, and we consolidated the separate appeals. A three-judge panel heard oral argument last year. But, after argument, the panel directed the parties to file simultaneous briefs setting forth their positions on whether this case should be heard en banc. Thereafter, a majority of nonrecused active judges voted to hear the case en banc.

B. *Dormant Commerce Clause*

The Commerce Clause of the United States Constitution assigns to Congress the authority "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. Implicit in this "affirmative grant of regulatory power to Congress" is a "'negative aspect,'

8        SAM FRANCIS FOUND. V. CHRISTIES

referred to as the dormant Commerce Clause." *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 991 (9th Cir. 2002). The dormant Commerce Clause is a "limitation upon the power of the States," *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976) (internal quotation marks omitted), which "prohibits discrimination against interstate commerce and bars state regulations that unduly burden interstate commerce," *Quill Corp. v. North Dakota*, 504 U.S. 298, 312 (1992) (citation omitted). This principle ensures that state autonomy over "local needs" does not inhibit "the overriding requirement of freedom for the national commerce." *Great Atl. & Pac. Tea Co.*, 424 U.S. at 371 (internal quotation marks omitted).

California's Resale Royalty Act requires the payment of royalties to the artist after a sale of fine art whenever "the seller resides in California *or* the sale takes place in California." Cal. Civ. Code § 986(a) (emphasis added). Defendants challenge the first clause because it regulates sales that take place outside California. Those sales have no necessary connection with the state other than the residency of the seller. For example, if a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

The Supreme Court has held that "our cases concerning the extraterritorial effects of state economic regulation stand at a minimum for the following proposition[]: . . . the

Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Instit.*, 491 U.S. 324, 336 (1989) (ellipsis and internal quotation marks omitted); *see also id.* (holding that "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature").   Here, the state statute facially regulates a commercial transaction that "takes place wholly outside of the State's borders."   *Id.* Accordingly, it violates the dormant Commerce Clause.  *See also Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th Cir. 1990) ("Direct regulation occurs when a state law directly affects transactions that take place . . . entirely outside of the state's borders.   Such a statute is invalid per se . . . ." (citation and internal quotation marks omitted)).

Cases such as *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070 (9th Cir. 2013), and *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013), do not apply here.   Unlike this case—which involves regulation of wholly out-of-state conduct—*Corey* and *Harris* concerned state laws that regulated *in-state conduct* with allegedly significant out-of-state practical effects. *See Corey*, 730 F.3d at 1080 (California's imposition of a low-carbon fuel standard, which applied to fuels "consumed *in California*" (emphasis added)); *Harris*, 729 F.3d at 941–43 (California's ban on the *in-state* sale of certain types of foods, including foie gras made by the plaintiffs).

Nor do cases that concerned the validity of state-imposed *taxes*, such as *Quill Corp.*, 504 U.S. 298, and *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977), control here. The rules applied in those cases do not govern because the Act does not impose a tax; it regulates conduct among private parties. The Act requires the seller or the seller's agent to pay a royalty *to the artist*, a private party, not to the government. Cal. Civ. Code § 986(a). The Act even spells out additional procedural requirements for agents of sellers: "the agent shall withhold 5 percent of the amount of the sale, locate the artist and pay the artist." *Id.* § 986(a)(1). The agent must withhold the royalty, undertake affirmative efforts to locate the artist and, once found, pay the artist. Nothing of the sort is required by an ordinary tax law, such as those at issue in *Quill Corp.* and *Complete Auto*.[1]

It matters not that, in some circumstances, the royalty amount eventually may wind up, through a form of escheat, in a special fund of the State's coffers. If the seller or the agent withholds the royalty, attempts unsuccessfully to locate the artist, remits the royalty to the Arts Council after 90 days, and if the Arts Council attempts unsuccessfully to locate the artist for seven years, only then does "the right of the artist terminate[]," and an amount equal to the royalty may be used by the Arts Council to purchase fine art. *Id.* § 986(a)(5). That contingent consequence seven-and-a-quarter years after

---

[1] For the same reasons, we reject the partial concurrence's assertion that the Act is "only a minor regulation of the proceeds." Partial concurrence at 17. The Act requires the seller or the seller's agent affirmatively to look for the artist and to pay the artist a royalty. If the seller or the seller's agent fails to locate the artist adequately, the artist may sue for damages plus attorney fees. The Act's regulation of the conduct of the seller and the seller's agent is neither "minor" nor a "regulation of the proceeds" alone.

the sale does not change the fact that the Act directly regulates the conduct of the seller or the seller's agent for a transaction that occurs wholly outside the State. Accordingly, *Healy* governs. Under *Healy*, the Act's clause regulating out-of-state art sales where "the seller resides in California," Cal. Civ. Code § 986(a), and no other connection to California need exist, violates the dormant Commerce Clause as an impermissible regulation of wholly out-of-state conduct.

The partial concurrence urges us to impose an artificial limitation—one never urged by any party—on that straightforward holding by limiting it to agents and not deciding the issue with respect to sellers. We decline for the simple reason that the constitutional doctrine that we apply operates without regard to that distinction. Under *Healy*, "the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders." 491 U.S. at 336 (ellipsis and internal quotation marks omitted). As we explain above, the Act's regulation of out-of-state sales runs afoul of that constitutional rule; accordingly, we must strike that portion of the Act as an impermissible regulation of wholly out-of-state commerce.

The scope of our holding is neither improper nor inconsistent with the Supreme Court's guidance. It is always possible to narrow a holding. For example, we could limit our holding today to agents from New York and reserve the question with respect to agents from, say, Pennsylvania. Or we could limit our holding to corporate agents and reserve the question with respect to natural persons. But, where the constitutional rule applies without regard to those facts, issuing an artificially constrained opinion serves no purpose; indeed, it would confuse the issue and lead to judicial inefficiency. Contrary to the partial concurrence's assertion,

we neither "anticipate a question of constitutional law" nor "formulate a rule of constitutional law." *United States v. Raines*, 362 U.S. 17, 21 (1960); partial concurrence at 19. We merely apply the simple, well established constitutional rule summarized in *Healy*.

C.  *Severability*

We next consider whether we may sever the invalid clause—"the seller resides in California or"—from the remainder of the Act.  "Severability is . . . a matter of state law." *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam).  In California, courts "look first to any severability clause." *Cal. Redev. Ass'n v. Matosantos*, 267 P.3d 580, 607 (Cal. 2011).  Here, the California legislature enacted the following provision:

> If any provision of this section or the application thereof to any person or circumstance is held invalid for any reason, such invalidity shall not affect any other provisions or applications of this section which can be effected, without the invalid provision or application, and to this end the provisions of this section are severable.

Cal. Civ. Code § 986(e).  That broadly worded clause covers the situation here.  Accordingly, there is "a presumption in favor of severance." *Cal. Redev. Ass'n*, 267 P.3d at 607; *see also Santa Barbara Sch. Dist. v. Superior Court*, 530 P.2d 605, 618 (Cal. 1975) (holding that "a severability clause normally calls for sustaining the valid part of the enactment" (internal quotation marks omitted)).

We must also look to "three additional criteria: The invalid provision must be grammatically, functionally, and volitionally separable." *Cal. Redev. Ass'n*, 267 P.3d at 607 (internal quotation marks omitted). The first two criteria are met easily. After severance, the revised provision reads: "Whenever a work of fine art is sold and . . . the sale takes place in California, the seller or the seller's agent shall pay to the artist of such work of fine art or to such artist's agent 5 percent of the amount of such sale." Cal. Civ. Code § 986(a) (severed clause replaced with ellipsis). Grammatical separability exists because "the invalid part[] can be removed as a whole without affecting the wording or coherence of what remains"; the revised provision above is perfectly coherent.[2] *Cal. Redev. Ass'n*, 267 P.3d at 607 (internal quotation marks omitted). Similarly, there is functional separability because "the remainder of the statute is complete in itself." *Id.* at 608 (internal quotation marks omitted). The revised provision has a reduced scope, of course, because it applies only to in-state sales; but it is complete, has coherent functionality, and does not conflict with any of the Act's other provisions.

---

[2] If we adopted the partial concurrence's approach, the grammatical separability test almost certainly would fail, and we would be required to invalidate the Act in its entirety. The partial concurrence refutes that conclusion by citing an earlier California Supreme Court case that purportedly does not require grammatical separability. Partial concurrence at 22–23 n.9 (citing *People v. Kelly*, 222 P.3d 186 (Cal. 2010)). Because the latest California Supreme Court precedent plainly requires grammatical separability, though, we apply that test. *See also Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 574–75 (9th Cir. 2014) (applying the grammatical separability test from *California Redevelopment Ass'n*).

The volitional separability test, although not facially obvious, also is met.  We conclude that "the remainder [of the statute] would have been adopted by the legislative body had [it] foreseen the partial invalidation of the statute."  *Id.* (internal quotation marks omitted).  Indeed, we think that the legislature *actually* foresaw the partial invalidation of the statute.  In detailed letters to the bill's legislative sponsor and to the governor, while deliberations were underway and before the Act's passage, legislative counsel explained that the law's "application to sales which occur outside of the State of California" would violate the Commerce Clause.  But, counsel opined, the law "would be valid . . . as to sales which occur in California."  Despite those warnings, the enacted version of the law included regulation of both in-state sales and out-of-state sales in easily separable clauses.  Perhaps most tellingly, the enacted version also added the severability clause, which expressly states the legislature's intent that "the provisions of this section are severable" if "any provision of this section or the application thereof to any person or circumstance is held invalid for any reason."  Cal. Civ. Code § 986(e).  We find no reason to deviate from the "presumption in favor of severance."  *Cal. Redev. Ass'n*, 267 P.3d at 607.

D.  *Conclusion*

California Civil Code section 986 regulates out-of-state and in-state sales of fine art.  We hold that the provision regulating out-of-state sales violates the dormant Commerce Clause but that the provision is severable from the remainder of the Act.  Because the district court held that the Act fell in its entirety, the court did not reach Defendants' alternative arguments.  We return this case to the three-judge panel for its consideration of the remaining issues.  We leave to the

panel's discretion the decision whether to address those issues on the merits or to remand them for the district court's determination in the first instance.

**REMANDED to the three-judge panel.**

REINHARDT, Circuit Judge, concurring in part and dissenting in part.

In 1976, California passed the California Resale Royalty Act (the Act) — a law that, for the last 39 years, has secured invaluable benefits for talented artists. The Act requires that when a fine art sale takes place in California or the seller of the art (sometimes referred to in this opinion as the owner) resides in California, the seller or the seller's agent must pay a five-percent royalty to the artist. Cal. Civ. Code § 986(a).[1] Under the Act, when a wealthy collector of modern art purchases for several million dollars a work of art that the prior owner bought for a minimal amount from a then-unknown young artist, the now-well-known artist will for the first time receive a measure of reasonable compensation for the art that he created.[2]

---

[1] The statute contains various exceptions. *See* Cal. Civ. Code § 986(b). It does not apply, for example, to resales after the death of the artist, *id.* § 986(b)(3), unless the artist died after January 1, 1983, in which case "the rights and duties created under [the Act] shall inure to his or her heirs, legatees, or personal representative, until the 20th anniversary of the death of the artist," *id.* § 986(a)(7).

[2] Of course, the compensation the artist receives is by no means excessive. If a painting sells for $1 million, the artist does not become a

In the case before us, the defendants who challenge the statute are not the seller, the buyer, or even the artist, but two New York auction houses who under the Act are the sellers' agents.[3] The Act imposes certain duties on them with respect to the disbursement of the royalty payments. The auction houses argue that because the Act imposes those duties in connection with art sales that take place outside of California, it violates the dormant Commerce Clause.[4] I agree that, for better or worse, the majority is compelled to conclude that, under the Supreme Court's dormant Commerce Clause jurisprudence, the out-of-state regulation of out-of-state entities is unconstitutional and that, as a result, the auction-house defendants cannot be subjected to the obligations required of them in connection with sales that take place outside of California. That, however, has little to do with the fundamental purpose and operation of the Act, or with the majority's unwarranted extension of the dormant Commerce Clause to declare a substantial portion of the Act unconstitutional — specifically, the portion that obligates Californians to pay to the creators of the work of art a small part of the proceeds from the fine art that they sell at a profit regardless of where the actual sale takes place.

---

millionaire; he receives $50,000, while the individual who was wise enough to purchase the painting originally retains $950,000.

[3] The third defendant, eBay, is not an "agent" within the meaning of the Act, and is therefore not subject to the Act. *Cf.* Cal. Att'y Gen. Op. No. 02-111 (2003) ("eBay does not act as an 'agent' for either the seller or buyer during the auction bidding process." (citing Cal Civ. Code § 2295)).

[4] The defendant auction houses in this case are Christie's, Inc., and Sotheby's, Inc.

It is unfortunate that the majority goes far beyond deciding the constitutionality of the Act as applied to the out-of-state auction-house defendants.  It decides a question entirely unnecessary to the resolution of this case when it holds the Act unconstitutional as applied to California art owners who ultimately receive proceeds from out-of-state sales and are then responsible for the payments to the artists.  The majority does so despite the fact that no California art owners are a party to the case, and despite the fact that we could and should affirm the district court's grant of the auction-house defendants' motion to dismiss on far narrower constitutional grounds.

To make matters worse, the majority not only decides an unnecessary, highly disputable question regarding California art owners, but it decides it incorrectly.  Indeed, I strongly disagree with the majority that Californians who sell their art by means of out-of-state transactions may not be required by California law to remit a portion of the proceeds they ultimately receive to the artists who created the works of art.  If I found it necessary or even permissible to reach this issue, I would hold that the Act as applied to California art owners is not an extraterritorial regulation.  In fact, the California statute represents only a minor regulation of the proceeds received from art sales by a small number of wealthy Californians.[5]   It in no way regulates the actual extra-

---

[5] The majority takes exception to my characterization of the Act as constituting only a "minor regulation of the proceeds."  *See* Majority Op. at 10 n.1.  Although I disagree with the majority's view that requiring wealthy art owners to remit a five-percent royalty payment from profitable art sales to the artists of the works sold is more than "minor," that disagreement is entirely immaterial to the legal issue before us: whether the Act, as-applied to California art owners, regulates out-of-state transactions and thus violates the dormant Commerce Clause.

territorial *sales*.  Indeed, it in no way affects such sales, but only imposes on Californians who dispose of their art for profit[6] an obligation to remit a small part of the proceeds to a third party *after* the transaction has been completed. Moreover, unlike in the Court's extraterritorial regulation cases under the dormant Commerce Clause, the Act does not regulate the price or terms of sales in other states, nor require Californians whose art is sold out-of-state, or the buyers of such art, to seek regulatory approval in California before the institution or completion of such sales.  For the above reasons, I dissent from the majority opinion to the extent that it holds the Act unconstitutional as applied to the actions of a California owner whose work of art is sold out-of-state.

As to the only question it is necessary for the court to answer — the application of the Act to out-of-state "agents" of California art sellers whose business is to sell art whether its owners are in-state or out-of-state residents — this case presents an entirely different legal question.  That question is whether under the dormant Commerce Clause a California law may impose duties on out-of-state business entities that engage in out-of-state transactions.  The defendant auction houses that sell the art work of Californians and the residents of numerous other states are New York entities engaged in the business of selling art primarily in New York.  That the defendants are called agents of the owners of the art work is, for purposes of the dormant Commerce Clause, of no legal significance.  The Supreme Court's current case law requires us to hold unconstitutional the requirement by state laws that out-of-state entities take or refrain from taking actions outside

---

[6] The Act does not apply "[t]o the resale of the work of fine art for a gross sales price less than the purchase price paid by the seller."  Cal. Civ. Code § 986(b)(4).

of the regulating state. The California statute does just that. Therefore, although I have serious doubts that this aspect of the Supreme Court's dormant Commerce Clause jurisprudence is wise, I reluctantly concur in the majority's judgment that the Act is not constitutional as applied to the imposition of obligations on out-of-state agents (i.e., professional sellers of art, including the auction houses) of California art owners with respect to sales that are conducted outside of California.

## I. California Art Owners

### A. The Majority's Unnecessary and Improper Decision

The Supreme Court has made clear that we are "bound by two rules . . . : one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *United States v. Raines*, 362 U.S. 17, 21 (1960) (citation and internal quotation marks omitted).[7] By deciding

---

[7] *See also New York v. Ferber*, 458 U.S. 747, 768 (1982) ("By focusing on the factual situation before us, and similar cases necessary for development of a constitutional rule, we face 'flesh-and-blood' legal problems with data 'relevant and adequate to an informed judgment.'" (footnotes omitted)); *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973) ("[U]nder our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. Constitutional judgments . . . are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court. . . ." (citations omitted)).

The above principles, of course, do not apply to the First Amendment overbreadth doctrine, under which the Supreme Court has "allowed

a constitutional question entirely unnecessary to the resolution of this case, the majority flagrantly violates both of these rules.

We have before us two lawsuits in which the defendants are out-of-state auction houses that acted as agents in New York for California art owners. They have moved to dismiss lawsuits filed against them as a result of their alleged noncompliance with the Act. We may affirm the district court's grant of the defendants' motions to dismiss by simply holding that the Act is unconstitutional as applied to the out-of-state agents. We need do no more, and under *Raines*, we therefore *must* do no more. By striking down not only the Act's out-of-state applications to the two out-of-state agents, but also its applications to the in-state actions of California art owners who receive money from out-of-state sales, the majority opinion goes far beyond what is necessary to decide the case. Indeed, it decides a constitutional question regarding the application of the dormant Commerce Clause to California residents that is both highly disputable and wholly unprecedented. In doing so, the majority formulates a constitutional rule far broader than is necessary to decide this case, in direct contravention of *Raines*.

The justification the majority puts forth for not narrowing its constitutional decision is plainly insufficient. The majority "decline[s]" to narrow its decision "for the simple reason that the constitutional doctrine that we apply operates without regard to" the distinction between out-of-state agents and in-state sellers. Majority Op. at 11. Here, the majority

persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Ferber*, 458 U.S. at 769.

"simply" assumes the answer to the fundamental question in this case — whether the imposition of obligations on out-of-state agents conducting business outside of the regulating state is constitutionally indistinguishable from that state's regulation of monetary proceeds received by its own residents. However one may ultimately resolve that question, it is at least clear that it is a highly controversial one on which we lack clear precedent. When such a question exists, but it is not necessary to decide it in the case before us, *Raines* is clear: we must *not* decide it.[8]

There is no other justification for the majority's decision to disregard Supreme Court precedent and decide an unnecessary constitutional issue. That the defendants have asked us to decide a broader question that does not affect them is no excuse for such an unnecessary constitutional holding. Nor is the majority's approach justified by the fact that the district court relied on broader reasoning than is necessary to grant the motions to dismiss. "We may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt." *Atel Financial*

---

[8] In contrast to the distinction between out-of-state agents and in-state sellers, the hypothetical distinctions offered by the majority — between New York agents and Pennsylvania agents, and between corporate agents and natural persons — obviously do not present highly controversial questions relevant to this case; indeed, they do not present *any* questions relevant to this case, and thus would provide no basis for narrowing the decision. The majority's hypothetical distinctions, unlike the differences that lie at the heart of the constitutional question that divides us, are, for all purposes, as irrelevant as the brown-cow / spotted-cow distinction about which most first-year law students learn during their first week's class attendance, even at the law school that the majority opinion's author and I attended.

*Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003). The majority has simply decided an unnecessary constitutional question without any need or cause to do so, in blatant disregard of the Supreme Court's instructions to the contrary.[9]

---

[9] The majority is incorrect that the limited approach that *Raines* requires would, if applied here, compel the invalidation of the entire Act. *See* Majority Op. at 13 n.2. To the contrary, under California law, were we to hold the statute unconstitutional *as applied* to the defendants "the appropriate remedy . . . is to disapprove, or disallow, *only the unconstitutional application* of [the Act], thereby preserving any residuary constitutional application with regard to the other provisions of the [Act]." *People v. Kelly*, 222 P.3d 186, 213 (Cal. 2010). The Act's severability clause expressly provides that "[i]f any . . . *application* [of the Act] to any person or circumstance is held invalid for any reason, such invalidity shall not affect any other provisions or applications of [the Act] which can be effected, without the invalid . . . application . . . ." Cal. Civ. Code § 986(e) (emphasis added). "A severability clause, although not conclusive, 'normally calls for sustaining the valid part of the enactment . . . . The final determination depends on whether 'the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute.'" *Walnut Creek Manor v. Fair Emp't & Hous. Comm'n*, 814 P.2d 704, 717 (Cal. 1991) (citation omitted) (internal quotation marks omitted). These requirements are clearly met in this case, as all of the duties imposed by the Act on agents are imposed in the alternative on California art owners. Indeed, after holding the Act unconstitutional as applied to the defendants, all of the duties imposed by the Act in connection with out-of-state sales would be fully "effected," as they would simply fall on California art owners alone, and all could be performed in California following the receipt of the proceeds by those owners. As to what the legislature would have done, even the majority acknowledges that it would have adopted the Act regardless of its partial invalidation.

The majority also protests that the application of the *Raines* requirement would fail the grammatical separability test. The grammatical separability requirement exists, however, only when we sever invalid *portions* of a statute, as the majority mistakenly does. *See Cal. Redev.*

## B.  The  Act  Is  Not  Extraterritorial  As  Applied  to Californians

Although the majority should not have reached the issue whether the Act is constitutional as applied to the conduct of California art owners, it compounded its error by deciding it incorrectly.   The Supreme Court has explained that "the 'Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the state.'" *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (citation omitted).  From this principle, the majority concludes that the Act must fall as to Californians who arrange for the sale of their art in New York or other states outside of California.   Its rationale is that requiring Californians to give the artists a portion of the proceeds they receive from out-of-state sales of the art they created "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" Majority Op. at 9 (quoting *Healy*, 491 U.S. at 336).   Contrary to the majority, were we permitted to resolve this question I would hold that the Act's requirement that California art owners remit to the original

---

*Assn. v. Matosantos*, 267 P.3d 580, 607 (Cal. 2011) (applying that requirement when determining "whether the invalid *portions* of a statute can be severed" (emphasis added)).  In contrast, the limited approach that is required here would not invalidate any *portions* of the Act, but would rather hold only that its *application in particular circumstances* is unconstitutional, as the court did in *Kelly* and *Walnut Creek*.  No grammatical separability requirement applies in California when a court holds a statute unconstitutional as applied in particular circumstances, as no words of the Act must be stricken in doing so.  *See Walnut Creek*, 814 P.2d at 716.  Indeed, neither *Kelly* nor *Walnut Creek* applied the grammatical separability requirement, despite the fact that such requirement preceded those cases in California law.  *See Calfarm Ins. Co. v. Deukmejian*, 771 P.2d 1247, 1256 (Cal. 1989).

24        SAM FRANCIS FOUND. V. CHRISTIES

artist a portion of the proceeds they receive from art sales is not in any respect a "regulat[ion of] a commercial transaction."  In my view, what the Act regulates is the use of the money that Californians ultimately receive from the transaction — not the transaction itself, and certainly not any out-of-state transaction.

Nowhere in its opinion does the majority explain *how* requiring Californians to remit a small percentage of the proceeds they ultimately receive from an out-of-state sale of art constitutes "regulat[ing] a commercial transaction," let alone a "commercial transaction that 'takes place wholly outside of the state's borders.'"  In fact, the Act in no way regulates the sale.[10]  With respect to Californians whose art is sold out of state, the Act operates only after the transaction is completed, just as it does in the case of art sold in-state.  In both cases, the Act deals solely with the income received by Californians — a clearly permissible subject of California's regulatory authority.  The Act tells Californians only that when they receive profits from a sale of fine art, they must comply with the obligations the law places on them.  As applied to Californians, the Act is plainly a regulation of Californians' in-state obligations — not a regulation of out-of-state entities, and not a regulation of out-of-state transactions.  In sum, the Act is simply a regulation of the proceeds that Californians have received from the sale of art, regardless of where the sale takes place.

---

[10] In this section, I assume that the obligations placed on out-of-state agents by the Act are stricken, and *all* of the proceeds from the sale are transmitted to the California seller.  Under this assumption, it is the Californian and not the agent who has the obligation to remit a small royalty payment to the artist.

My conclusion is further supported by the Court's cases that strike down laws as having an impermissible extraterritorial reach.  In all such cases, the laws at issue have had a direct effect on out-of-state commercial transactions by regulating the price or terms of such transactions, *see, e.g.*, *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935), or by otherwise requiring "an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another," *Healy*, 491 U.S. at 337 (citation omitted); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573 (1986); *Edgar v. MITE Corp.*, 457 U.S. 624, 641–43 (1982) (plurality opinion).  The Act, as applied to California art owners, is far different.  It does not in any respect affect out-of-state actors or their transactions. Indeed, nothing in the Act dictates the price that a California art seller may charge when selling art outside of the state, and California does not impose any preconditions whatsoever on sales by Californians who wish to dispose of their art out-of-state.   The Court's cases striking down state laws as extraterritorial regulations simply do not apply.

If we were permitted to reach this issue, I would uphold the Act as applied to Californians who sell their art in-state or out-of-state, in this country or elsewhere.  I would hold that the Act's requirement that Californians pay to the artists a portion of the proceeds they receive as a result of the sale of their art does not violate the dormant Commerce Clause.

## II. Out-of-State Agents of California Art Owners

The constitutionality of the Act as applied to out-of-state agents of California art sellers presents a far different constitutional question.  In an attempt to make the Act more effective, the legislature provided that whenever fine art is

sold by an agent of a Californian — even if the agent is not a Californian, and even if the sale takes place outside of California — "the agent shall withhold 5 percent of the amount of the sale, locate the artist and pay the artist." Cal. Civ. Code § 986(a)(1). The agents that the law contemplates are primarily major auction houses, such as defendants Christie's and Sotheby's, which, along with major auction houses in other countries, have the ability and experience to obtain the widest buyer pool and the highest prices for the sale of fine art. They also have the resources necessary to locate artists all over the world and to comply with the terms of the Act by remitting to them a portion of the proceeds. By relying on major auction houses to locate and pay artists, however, the Act imposes obligations on out-of-state entities with respect to transactions that occur outside of California. That obligation is a part of the transaction they conduct, and their role in that transaction is not completed until they have disbursed a portion of the funds they have received to the artist when he can be located.

Unlike the obligations imposed by the Act on Californians after they receive monetary proceeds from the sale of their art regardless of where it is sold, it cannot be said that the Act's imposition of special obligations on out-of-state agents for out-of-state transactions represents a regulation solely of the actions of the residents of the regulating state. Nor can it be said that as applied to out-of-state agents this case is a "practical effects" case — i.e., a case concerning an intrastate regulation with possibly significant practical effects on out-of-state commerce. Majority Op. at 9. Instead, as applied to the actions of out-of-state agents in conducting a sale of art outside of California, the Act *directly* applies "to commerce that takes place wholly outside of the State's borders," and is therefore *per se* invalid under the Court's dormant Commerce

Clause jurisprudence. *Healy*, 491 U.S. at 336 (citation omitted); *see also Valley Bank v. Plus System, Inc.*, 914 F.2d 1186, 1190 (9th Cir. 1990).

I have serious doubts that such a *per se* rule is wise as a matter of policy or that it is within the purview of the dormant Commerce Clause as properly framed. The Supreme Court has explained that the "crucial inquiry" under the dormant Commerce Clause is whether the law at issue is "a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see also McBurney*, 133 S. Ct. at 1719 ("Our dormant Commerce Clause jurisprudence . . . is driven by a concern about 'economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" (citation omitted)). In its extraterritoriality cases, however, the Court neglects this central concern of the dormant Commerce Clause. Indeed, the Court's requirement that we invalidate all state laws that apply extraterritorially "has nothing to do with favoritism. Even state laws that neither discriminate against out-of-state interests nor disproportionately burden interstate commerce may run afoul of extraterritoriality . . . ." *American Beverage Ass'n v. Snyder*, 735 F.3d 362, 378 (6th Cir. 2013) (Sutton, J., concurring).

This case is one such example. The Act imposes obligations on out-of-state entities not to serve any protectionist purpose, but rather to make the law's valid requirement that Californians remit a portion of the proceeds they receive from art sales more effective. It does not provide any incentive for auction houses to sell the art of Californians relative to other states' residents, nor does it

impose more stringent regulations on out-of-state auction houses than it does on California auction houses. The Act, in short, is simply not the type of law to which the Court's dormant Commerce Clause jurisprudence is primarily aimed; it in no way provides an advantage to California residents or discriminates against out-of-state businesses, and it serves a clearly legitimate local goal — strengthening an in-state regulation benefitting the arts.

Circuit courts in recent years have been compelled by the Court's extraterritoriality doctrine to invalidate other state laws that serve no protectionist purpose whatsoever and that further clearly legitimate state goals, for the sole reason that they apply to out-of-state conduct directly. Michigan, for example, promoted recycling by requiring consumers for each beverage container purchased to pay a ten-cent deposit that is redeemable upon returning an empty container. *Id.* at 366 (majority opinion). In order to prevent the fraudulent redemption of ten cents for a container not purchased in Michigan, the state passed a law requiring that containers sold in Michigan bear a unique mark, and that the unique mark used on Michigan containers not be used on containers sold in other states. *Id.* at 367. Although the Sixth Circuit concluded that the law does not discriminate against interstate commerce in any manner, *id.* at 370–73, it held that the law's unique-mark requirement was extraterritorial in violation of the dormant Commerce Clause because it regulated the marks on containers sold in other states, *id.* at 373–76. Like its Big Ten rival (though surely not its primary one) to the north, Indiana also had a laudable goal when it sought to protect its residents from predatory lending. It did so by subjecting all loan companies that advertise in Indiana and enter into a loan transaction with a resident of Indiana — irrespective of whether the loan company operates in Indiana — to Indiana

lending regulations. *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 662–63 (7th Cir. 2010). Despite the fact that this law, like the Michigan unique-mark law, did not discriminate against or disadvantage out-of-state companies, *id.* at 665, the Seventh Circuit — correctly under the Supreme Court's cases — held that the law's application to an Illinois loan company violated the dormant Commerce Clause, *id.* at 665–69.

It is unfortunate that Supreme Court jurisprudence compels our Court in this case, and has compelled our fellow circuit courts in others, to invalidate the extraterritorial application of such innocuous and beneficial state laws. I suspect that, in our increasingly interconnected country, we will continue to see efforts from states to further legitimate local goals even though, in some respects, they may directly affect conduct outside of their borders. Some efforts may well intrude on the autonomy of other states, and federal courts may be forced to intercede. I have serious doubts, however, that we should invalidate *every* state law that applies to out-of-state conduct. In short, I would hope that, given the numerous changes in commerce that have recently occurred, the Supreme Court would reconsider whether the *per se* rule it articulated in *Healy* remains a necessary aspect of our dormant Commerce Clause jurisprudence.

In the meantime, I regret that my colleagues in the majority have extended the extraterritoriality doctrine far beyond where it has ever previously been invoked by invalidating the California Resale Royalty Act not only as it applies to out-of-state agents who conduct out-of-state auctions or sales, but also as to its provisions that require Californians to pay a royalty to artists following a profitable fine art sale regardless of the site of the sale.

BERZON, Circuit Judge, with whom Circuit Judge PREGERSON joins, concurring in part.

I concur in the majority opinion insofar as it holds the California Resale Royalty Act, Cal. Civ. Code § 986 ("the Act"), unconstitutional as applied to out-of-state art sales conducted by out-of-state agents.  As the Act so applied "directly controls commerce occurring wholly outside the boundaries" of California, it violates the dormant Commerce Clause.  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989); *see also Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th Cir. 1990).

But I would stop there.  The majority opinion, in my view, unnecessarily decides that the Act is unconstitutional as applied to out-of-state art sales conducted by California residents as well.  The partial dissent also reaches this issue, arriving at the opposite conclusion.  Yet none of the parties before us are California sellers, nor does the record contain any evidence pertaining to out-of-state sales by California residents.  Furthermore, the Act imposes somewhat different obligations on California sellers and sellers' agents.  *Compare* Cal. Civ. Code § 986(a) *with id.* § 986(a)(1).

That the Act's requirement that out-of-state agents "withhold 5 percent of the amount of [an out-of-state] sale, locate the artist and pay the artist," *id.*, directly regulates extraterritorial commercial transactions in violation of the Supreme Court's dormant Commerce Clause jurisprudence is clear.  It is not so clear to me, however, that the royalty obligations the Act imposes on California sellers similarly regulate commercial *transactions*, as opposed to the post-sale income of Californian residents.  But we need not decide the latter question.  Indeed, the disagreement between the

majority opinion and the partial dissent as to whether the Act "directly regulates the conduct of the seller," Majority Op. at 10–11, or simply "regulat[es] . . . the proceeds that Californians have received from the sale of art," Partial Dissent at 24, illustrates why we should not, in the absence of sufficient information concerning the Act's operation on out-of-state sales by California residents, determine the constitutionality of the Act more generally.

Consequently, I would hold the Act unconstitutional as applied to out-of-state art sales by out-of-state agents, such as the New York auction houses party to this case, and go no further.