1 | JASON D. RUSSELL (CA SBN 169219)
jason.russell@skadden.com
2 | HILLARY A. HAMILTON (CA SBN 218233)
hillary.hamilton@skadden.com
3 | ANGELA COLT (CA SBN 286275)
angela.colt@skadden.com
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
5 | Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
6 | Facsimile:   (213) 687-5600

7 | Attorneys for Defendant Christie's, Inc.

8 | *Additional Counsel For Related Case Listed On Following Page*

9 |                UNITED STATES DISTRICT COURT

10 |              CENTRAL DISTRICT OF CALIFORNIA

11 |                     CENTRAL DIVISION

12 | THE SAM FRANCIS
FOUNDATION; ESTATE OF
13 | ROBERT GRAHAM; CHUCK
CLOSE; LADDIE JOHN DILL;
14 | individually and on behalf of all
others similarly situated,

15 |

16 |                      Plaintiffs,

17 |             v.

18 | CHRISTIE'S, INC., a New
York corporation,

19 |                      Defendant.

20 |

21 |

22 | ESTATE OF ROBERT
GRAHAM, CHUCK CLOSE,
LADDIE JOHN DILL,
23 | individually and on behalf of all
others similarly situated,

24 |

25 |                      Plaintiffs,

26 |             v.

27 | SOTHEBY'S, INC.,

28 |                      Defendant.

CASE NO.:  2:11-cv-08605-MWF (FFM)

**(1) AUCTION HOUSE DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINTS**

Lodged Under Separate Cover:
**(2) [PROPOSED] ORDER.**

Hon. Michael W. Fitzgerald
Courtroom:  1600
Hearing:  March 21, 2016 at 10:00 a.m.

CASE NO.:  2:11-cv-08604-MWF (FFM)

---

AUCTION HOUSE DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS

1  *Additional Counsel For Related Case*

2  PAUL T. FRIEDMAN (CA SBN 98381)
   PFriedman@mofo.com
3  DEANNE E. MAYNARD (*Pro Hac Vice*)
   DMaynard@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000
6  Facsimile:  415.268.7522

7  STEVEN A. REISS (*Pro Hac Vice*)
   steven.reiss@weil.com
8  HOWARD B. COMET (*Pro Hac Vice*)
   howard.comet@weil.com
9  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
10 New York, New York 10153
   Telephone: 212.310.8000
11 Facsimile:  212.310.8007

12 Attorneys for Defendant Sotheby's, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE THAT** on March 21, 2016 at 10:00 a.m., or as

3  soon thereafter as the parties may be heard, in Courtroom 1600 of the above-entitled

4  Court, located at 312 N. Spring Street, Los Angeles, California 90012, Defendants

5  Christie's, Inc. and Sotheby's, Inc. (collectively, the "Auction Houses") will, and

6  hereby do, move the Court for an order dismissing this action pursuant to Federal

7  Rules of Civil Procedure 8(a) and 12(b)(6).

8  Plaintiffs' claims are based on the California Resale Royalties Act, California

9  Civil Code § 986(a) ("CRRA").  The grounds for this Motion are that: (1) the

10  Copyright Act of 1976 preempts the CRRA; (2) the CRRA is unconstitutional, and

11  therefore unenforceable, because it effects a per se taking of private property in

12  violation of the U.S. and California constitutions; (3) punitive damages are

13  unavailable as a matter of law; (4) the claims of the Estate of Robert Graham must be

14  dismissed because an estate or trust is not a legal entity and has no capacity to sue;

15  and (5) in any event, Plaintiffs failed to sufficiently plead their claims, notably, the

16  existence of timely sales allegedly subject to the CRRA.

17  This Motion is based on this Notice of Motion and Motion, the Memorandum

18  of Points and Authorities, all pleadings and papers in two related matters—*The Sam

19  Francis Foundation, et al. v. Christie's, Inc.*, No. 2:11-cv-08605-MWF-FFM (C.D.

20  Cal.), and *Estate of Robert Graham, et al. v. Sotheby's, Inc.*, No. 2:11-cv-08604-

21  MWF-FFM (C.D. Cal.), all matters of which this Court may take judicial notice, and

22  upon such other matters as may be presented to the Court.

23  //

24  //

25  //

26  //

27  //

28  //

1    This Motion is made following the conference of counsel pursuant to Central

2    District of California Local Rule 7-3, which took place on January 9, 2012, although

3    counsel have been discussing the basis for the Motion since November 2011.  During

4    that conference, the parties discussed the grounds for this Motion, and Plaintiffs'

5    counsel indicated that they would oppose the relief requested.

6

7    Dated:      February 1, 2016          By:   /s/ Jason D. Russell
                                                     Jason D. Russell

8
                                           JASON D. RUSSELL (CA SBN 169219)
9                                          jason.russell@skadden.com
                                           HILLARY A. HAMILTON (CA SBN 218233)
10                                         hillary.hamilton@skadden.com
                                           ANGELA COLT (CA SBN 286275)
11                                         angela.colt@skadden.com
                                           SKADDEN, ARPS, SLATE,
12                                           MEAGHER & FLOM LLP
                                           300 South Grand Avenue
13                                         Los Angeles, California 90071-3144
                                           Telephone:  (213) 687-5000
14                                         Facsimile:   (213) 687-5600

15                                         Attorneys for Defendant CHRISTIE'S, INC.

16   All other signatories listed,
     and on whose behalf this        By:   /s/ Paul T. Friedman
17   filing is submitted, concur in              Paul T. Friedman
     the filing's content and have
18   authorized the filing.          PAUL T. FRIEDMAN (CA SBN 98381)
                                           PFriedman@mofo.com
19                                         DEANNE E. MAYNARD (*Pro Hac Vice*)
                                           DMaynard@mofo.com
20                                         MORRISON & FOERSTER LLP
                                           425 Market Street
21                                         San Francisco, California  94105-2482
                                           Telephone: 415.268.7000
22                                         Facsimile:  415.268.7522

23                                         STEVEN A. REISS (*Pro Hac Vice*)
                                           steven.reiss@weil.com
24                                         HOWARD B. COMET (*Pro Hac Vice*)
                                           howard.comet@weil.com
25                                         WEIL, GOTSHAL & MANGES LLP
                                           767 Fifth Avenue
26                                         New York, New York 10153
                                           Telephone: 212.310.8000
27                                         Facsimile:  212.310.8007
                                           Attorneys for Defendant SOTHEBY'S, INC.

28

1

## <u>TABLE OF CONTENTS</u>

2  PRELIMINARY STATEMENT ..................................................................... 1

3  STATEMENT OF FACTS ............................................................................ 3

4  LEGAL STANDARD ................................................................................... 6

5  ARGUMENT ................................................................................................ 6

I.     THE COPYRIGHT ACT OF 1976 PREEMPTS PLAINTIFFS' CLAIMS ................................................................................ 6

     A.    Plaintiffs' Claims Conflict With The First-Sale Doctrine .......... 7

         1.    The First-Sale Doctrine Forbids Restraints On the Resale of Copyrighted Works ..................................... 8

     B.    The Copyright Act Expressly Preempts Plaintiffs' Claims. ..... 17

         1.    Plaintiffs' Claims Fall Within The Subject Matter of The Copyright Act ........................................... 18

         2.    Plaintiff Allege Violations Of State-Law Rights Equivalent To The Rights Contained In The Copyright Act ........................................................ 18

         3.    *Baby Moose* Does Not Control This Case ...................... 20

II.    THE CRRA EFFECTS A TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE U.S. AND CALIFORNIA CONSTITUTIONS ..................................................................... 23

     A.    The CRRA Confiscates Private Property ................................. 24

     B.    The CRRA Effects A *Per Se* Taking Of Private Property ........ 26

III.   PLAINTIFFS SEEK RELIEF PRECLUDED AS A MATTER OF LAW ................................................................................ 31

     A.    Punitive Damages Are Not Available Under The UCL .......... 31

     B.    Punitive Damages Are Not Recoverable Under The CRRA .... 32

         1.    The CRRA Does Not Provide For Punitive Damages ... 32

         2.    The Legislative History Shows That Punitive Damages Are Not An Available Remedy Under The CRRA ............................................................... 34

         3.    The Express Inclusion Of A Punitive Damages Remedy In A Contemporary Artist Protection Statute Shows That Punitive Damages Are Not Authorized Under The CRRA ................................ 35

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.   THE CLAIMS OF THE ESTATE OF ROBERT GRAHAM FAIL ............................................................................... 37

V.   PLAINTIFFS' PLEADING OF THEIR CLAIMS IS INSUFFICIENT ................................................................. 38

    A.   Plaintiffs Have Not Alleged Facts To Support Their Claims ... 39

    B.   Plaintiffs Fail To Establish Their  Facially Time-Barred Claims Are Viable .................................................................. 40

CONCLUSION ................................................................................... 45

AUCTION HOUSE DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS

**TABLE OF AUTHORITIES**

**CASE**                                                                                    **PAGE(S)**

*Abelyan v. OneWest Bank,*
   No. CV 09-7163 CAS (AGRx),
   2009 WL 3784610 (C.D. Cal. Nov. 9, 2009) ...................................................41

*Adobe Systems Inc. v. Christenson,*
   No. 12-17371
   2015 WL 9487887 (9th Cir. Dec. 30, 2015) (to be published in F.3d)........9, 11

*Anthony v. Superior Court,*
   109 Cal. App. 3d 346 (1980) ...................................................................36

*Armstrong v. United States,*
   364 U.S. 40 (1960) ...................................................................................23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................6, 41

*Baby Moose Drawings, Inc. v. Valentine,*
   No. 2:11-cv-00697-JHN-JCGx,
   2011 WL 1258529 (C.D. Cal. Apr. 1, 2011)......................................20, 21, 22

*Bautista v. Los Angeles County,*
   216 F.3d 837 (9th Cir. 2000) ...................................................................39

*Bel-Bel International Corp. v. Community Bank of Homestead,*
   162 F.3d 1101 (11th Cir. 1998) ...............................................................28

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................6

*Bickley v. Schneider National, Inc.,*
   No. C 08-05806 JSW,
   2009 WL 5841196 (N.D. Cal. Feb. 11, 2009).........................................33

*Bloomer v. Millinger,*
   68 U.S. 340 (1863) ..................................................................................10

*Board of Regents of State Colleges v. Roth,*
   408 U.S. 564 (1972) ................................................................................24

*Bobbs-Merrill Co. v. Straus,*
   210 U.S. 339 (1908) ................................................................................12

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
   489 U.S. 141 (1989) ..................................................................................8

*Borden v. Horwitz,*
   No. CV 10-00141-MWF,
   2012 WL 6618196 (C.D. Cal. Dec. 19, 2012) ........................................18

*Brewer v. Premier Golf Properties*,
  168 Cal. App. 4th 1243 (2008) ................................................................ 33

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) .................................................................... 19

*Brilliance Audio, Inc. v. Haights Cross Communications, Inc.*,
  474 F.3d 365 (6th Cir. 2007) ........................................................... 9, 12, 19

*Brotherton v. Cleveland*,
  923 F.2d 477 (6th Cir. 1991), *aff'd in part, rev'd in part, remanded*,
  173 F.3d 552 (6th Cir. 1999) .................................................................... 25

*Brown v. Legal Foundation of Washington*,
  538 U.S. 216 (2003) ..................................................................... 24, 26, 27

*Burton v. Time Warner Cable Inc.*,
  No. CV 12-06764 JGB,
   2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) ........................................ 40

*California Corrections Peace Officers' Ass'n v. State*,
  188 Cal. App. 4th 646 (2010) .................................................................. 36

*Calder v. Bull*,
  3 U.S. 386 (1798) ..................................................................................... 31

*Campbell v. PricewaterhouseCoopers*,
  Nos. CIV. S-06-2376 LKK/GGH,
  2008 WL 3836972 (E.D. Cal. Aug. 14, 2008) ......................................... 33

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal. 4th 163 (1999) ............................................................................. 31

*Chapman v. Pier I Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) .................................................................... 39

*City of Inglewood v. Teixeira*,
  Case No. CV-15-01815-MWF,
  2015 WL 5025839 (C.D. Cal. Aug. 20, 2015) .......................................... 6

*Clark v. Superior Court*,
  50 Cal. 4th 605 (2010) ............................................................................. 32

*Community for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) ........................................................................ 6, 8, 16

*Connecticut General Life Insurance Co. v. La Peer Surgery Center LLC*,
  No. 2:13-cv-03726-CAS(JCFx),
  2014 WL 961806 (C.D. Cal. Mar. 12, 2014) ........................................... 38

*Cummings v. Stanley*,
  177 Cal. App. 4th 493 (2009) .................................................................. 36

*Danielson v. Wells Fargo Bank*,
    No. CV11-5927-PSF (PLAx),
    2011 WL 4480849 (C.D. Cal. Sept. 26, 2011)..................................31

*De Anza Santa Cruz Mobile Estates Homeowners Ass'n v. De Anza Santa
    Cruz Mobile Estates*,
    94 Cal. App. 4th 890 (2001) ...........................................................33, 34

*Dean v. United States*,
    129 S. Ct. 1849 (2009) ........................................................................32

*Doe v. City of Los Angeles*,
    42 Cal. 4th 531 (2007)........................................................................32

*Doran v. Embassy Suites Hotel*,
    No. C-02-1961 EDL,
    2002 WL 1968166 (N.D. Cal. Aug. 26, 2002) ...................................34

*Durgom v. Janowiak*,
    74 Cal. App. 4th 178 (1999) ...............................................................21

*Eastern Enterprises v. Apfel*,
    524 U.S. 498 (1998) ............................................................................31

*Estate of Graham v. Sotheby's Inc.*,
    860 F. Supp. 2d 1117 (C.D. Cal. 2012)..............................................14

*Estate of Migliaccio v. Midland National Life Insurance Co.*,
    436 F. Supp. 2d 1095 (C.D. Cal. 2006)..............................................37

*Evergreen Marine Corp. v. Division Sales, Inc.*,
    No. 01C4933,
    2003 WL 1127905 (N.D. Ill. March 12, 2003) ..................................28

*Fischer v. Machado*,
    50 Cal. App. 4th 1069 (1996)..............................................................29

*Flores v. County of Los Angeles*,
    758 F.3d 1154 (9th Cir. 2014) ............................................................39

*Gelow v. Central Pacific Mortgage Corp.*,
    656 F. Supp. 2d 1217 (E.D. Cal. 2009)..............................................29

*Guerrero v. Gates*,
    442 F.3d 697 (9th Cir. 2006) .........................................................42, 45

*Hadjavi v. CVS Pharmacy, Inc.*,
    No. CV 10-04886 SJO (RCx),
    2010 WL 7695383 (C.D. Cal. Sept. 22, 2010)..................................32

*Haigler v. Donnelly*,
    18 Cal. 2d 674 (1941) .........................................................................29

*Hall v. North American Van Lines, Inc.*,
    476 F.3d 683 (9th Cir. 2007) ..............................................................21

ix

*Hawaii Housing Authority v. Midkiff,*
  467 U.S. 229 (1984) ....................................................................... 24

*Hawkins v. Comparet-Cassani,*
  251 F.3d 1230 (9th Cir. 2001) ..................................................... 40

*HFH Ltd. v. Superior Court,*
  15 Cal. 3d 508 (1975) ................................................................. 23

*Hinton v. Pacific Enterprises,*
  5 F.3d 391 (9th Cir. 1993) .................................................... 42, 43

*Horne v. Department of Agriculture,*
  135 S. Ct. 2419 (2015) .......................................................25, 26, 30

*K2 American Corp. v. Roland Oil & Gas, LLC,*
  653 F.3d 1024 (9th Cir. 2011) ..................................................... 21

*Keilholtz v. Lennox Hearth Products Inc.,*
  No. C 08-00836 CW,
  2009 WL 2905960 (N.D. Cal. Sept. 8, 2009)................................... 42

*Kelo v. City of New London,*
  545 U.S. 469 (2005), *reh'g denied*, 545 U.S. 1158 (2005) ............. 24

*Kirtsaeng v. John Wiley & Sons, Inc.,*
  133 S. Ct. 1351 (2013) ...................................................... *passim*

*In re Kolb,*
  326 F.3d 1030 (9th Cir. 2003) ..................................................... 32

*Koontz v. St. Johns River Water Management District,*
  133 S. Ct. 2586 (2013) ...................................................25, 27, 28

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003)......................................................... 32, 34

*Korn v. Polo Ralph Lauren Corp.,*
  644 F. Supp. 2d 1212 (E.D. Cal. 2008) ......................................... 33

*Kremen v. Cohen,*
  337 F.3d 1024 (9th Cir. 2003) ..................................................... 24

*Lauter v. Anoufrieva,*
  No. CV 07-6811 JVS(JC),
  2010 WL 3504745 (C.D. Cal. July 14, 2010) ................................. 44

*Laws v. Sony Music Entertainment, Inc.,*
  448 F.3d 1134 (9th Cir. 2006)..........................................17, 18, 19, 20

*Lee v. Oregon,*
  107 F.3d 1382 (9th Cir. 1997) ..................................................... 40

*Levin v. City & County of San Francisco,*
  71 F. Supp. 3d 1072 (N.D. Cal. 2014) ........................................... 28

*Lierboe v. State Farm Mutual Automobile Insurance Co.*,
   350 F.3d 1018 (9th Cir. 2003) ................................................................ 40

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) ...................................................................... 26, 29

*Lubner v. City of Los Angeles*,
   45 Cal. App. 4th 525 (1996) ................................................................ 37

*Madrigal v. Tommy Bahama Group, Inc.*,
   No. CV 09-08924 SJO (MANx),
   2010 WL 4384235 (C.D. Cal. Oct. 18, 2010) ........................................ 32

*Maita Distributors, Inc. of San Mateo v. DBI Beverage, Inc.*,
   667 F. Supp. 2d 1140 (N.D. Cal. 2009) ................................................ 36

*Marschall v. Caine & Weiner Co.*,
   No. SA CV 11-00397 DOC (RNBx),
   2011 WL 2516502 (C.D. Cal. June 23, 2011) ........................................ 41

*McKelvey v. Boeing N.A., Inc.*,
   74 Cal. App. 4th 151 (1999) ................................................................ 42

*McNeil v. Home Budget Loans*,
   No. CV 09-7588 ODW (AJWx),
   2010 WL 1999580 (C.D. Cal. May 13, 2010) ........................................ 41

*Montalvo v. Spirit Airlines*,
   508 F.3d 464 (9th Cir. 2007) .................................................................. 7

*Moore-Thomas v. Alaska Airlines, Inc.*,
   553 F.3d 1241 (9th Cir. 2009) .............................................................. 21

*Morseburg v. Balyon*,
   621 F.2d 972 (1980) ........................................................ 13, 14, 15, 28

*Murphy v. Kenneth Cole Productions, Inc.*,
   40 Cal. 4th 1094 (2007) ...................................................................... 35

*Omega S.A. v. Costco Wholesale Corp.*,
   776 F.3d 692 (9th Cir. 2015), *cert. dismissed*,
   136 S. Ct. 445 (2015) ............................................................... 7, 10, 12

*Pacific Coast Federation of Fisherman's Ass'ns v. Blank*,
   693 F.3d 1084 (9th Cir. 2012) .............................................................. 32

*Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*,
   832 F. Supp. 1378 (C.D. Cal. 1993) ...................................................... 12

*People ex rel. Gwinn v. Kothari*,
   83 Cal. App. 4th 759 (2000) ................................................................ 36

*People v. Galvan*,
   168 Cal. App. 4th 846 (2008) .............................................................. 36

xi

*People v. Goodloe,*
    37 Cal. App. 4th 485 (1995) ....................................................................... 36

*People v. Valenzuela,*
    92 Cal. App. 4th 768 (2001) ....................................................................... 36

*In re Peterson,*
    156 Cal. App. 4th 676 (2007) ..................................................................... 38

*Phillips v. Washington Legal Foundation,*
    524 U.S. 156 (1998) .................................................................24, 25, 26, 30

*Platt Electrical Supply, Inc. v. EOFF Electrical, Inc.,*
    522 F.3d 1049 (9th Cir. 2008) .................................................................... 42

*Podany v. Robertson Stephens, Inc.,*
    350 F. Supp. 2d 375 (S.D.N.Y. 2004) ........................................................ 43

*PNY Technologies, Inc. v. SanDisk Corp.,*
    No. C–11–04689 YGR,
    2012 WL 1380271  (N.D. Cal. Apr. 20, 2012) ............................................ 10

*PSC Inc. v. Symbol Technologies, Inc.,*
    26 F. Supp. 2d 505 (W.D.N.Y. Oct. 22, 1998) ........................................... 11

*Quality King Distribution, Inc. v. L'Anza Research International, Inc.,*
    523 U.S. 135 (1998) ......................................................................8, 9, 12, 14

*Ray v. ESPN, Inc.,*
    783 F.3d 1140 (8th Cir. 2015) .................................................................... 19

*Richtek Technology Corp. v. UPI Semiconductor Corp.,*
    No. C 09-05659 WHA,
    2011 WL 166292 (N.D. Cal. Jan. 19, 2011) .............................................. 39

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984) ................................................................................... 30

*Rutledge v. Boston Woven Hose & Rubber Co.,*
    576 F.2d 248 (9th Cir. 1978) ...................................................................... 44

*Ryoo Dental, Inc. v. Han,*
    No. SACV 15-308-JLS,
    2015 WL 4208580 (C.D. Cal. July 9, 2015) ............................................... 18

*Sadsad v. Washington Mutual Bank F.A.,*
    No. CV 09-03890 DDP (RZx),
    2009 WL 4349801 (C.D. Cal. Nov. 25, 2009) ........................................... 45

*Sam Francis Foundation v. Christie's, Inc.,*
    784 F.3d 1320 (9th Cir. 2015) ..........................................................*passim*

*Sam Francis Foundation v. Christies's, Inc.,*
    No. 15-280,
    2016 WL 100374 (U.S. Jan. 11, 2016) (to be published in S. Ct.) ................... 1

*San Disk Corp. v. Round Rock Research LLC,*
No. C 11-5243 RS,
2014 WL 2700583 (N.D. Cal. June 13, 2014) ................................................ 10

*San Remo Hotel, L.P. v. City & County of San Francisco,*
27 Cal. 4th 643 (2002) ........................................................................................ 23

*Santa Maria v. Pacific Bell,*
202 F.3d 1170 (9th Cir. 2000), *overruled on other grounds by*
*Socop–Gonzalez v. INS,*
272 F.3d 1176 (9th Cir. 2001) (en banc). ...................................................... 45

*Schneider v. California Department of Corrections ("Schneider I"),*
151 F.3d 1194 (9th Cir. 1998), *vacated,*
345 F.3d 716 (9th Cir. 2003) ....................................................................... 23, 25

*Schneider v. California Department of Corrections ("Schneider II"),*
345 F.3d 716 (9th Cir. 2003) ....................................................................... 27, 31

*Singer ex rel. Singer v. Paul Revere Life Insurance Co.,*
No. CV 14-08700 MMM (MRWx),
2015 WL 3970284 (C.D. Cal. June 30, 2015) ............................................. 41, 43

*Smith v. Cimmet,*
199 Cal. App. 4th 1381 (2011) ..................................................................... 37, 38

*Sony Corp. of America v. Universal City Studios, Inc.,*
464 U.S. 417 (1984), *reh'g denied,* 465 U.S. 1112 (1984) ................... 8, 10, 16

*Special Purpose Accounts Receivable Cooperative Corp. v. Prime One*
*Capital Co., L.L.C.,*
125 F. Supp.2d 1093 (S.D. Fla. 2000) .............................................................. 28

*Stengel v. Medtronic, Inc.,*
704 F.3d 1224 (9th Cir. 2013), *cert. denied,*
134 S. Ct. 2839 (2014) ...................................................................................... 2, 8

*T.T. Exclusive Cars, Inc. v. Christie's Inc.,*
No. 96 CIV. 1650 LMM,
1996 WL 737204 (S.D.N.Y. Dec. 24, 1996) .................................................... 44

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,*
535 U.S. 302 (2002) ............................................................................................ 29

*Thorman v. American Seafoods Co.,*
421 F.3d 1090 (9th Cir. 2005) ........................................................................... 44

*Turnacliff v. Westly,*
546 F.3d 1113 (9th Cir. 2008) ........................................................................... 32

*UMG Recordings, Inc. v. Augusto,*
628 F.3d 1175 (9th Cir. 2011) ...................................................................... 8, 14

*United States v. Sperry Corp.,*
493 U.S. 52 (1989) .............................................................................................. 30

xiii

*Vasquez v. State*,
    45 Cal. 4th 243 (2008) ........................................................................ 32

*Vernor v. Autodesk, Inc.*,
    621 F.3d 1102 (2010) ........................................................................ 19

*Wal-Mart Stores, Inc. Wage & Hour Litigation*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................ 33, 34

*Webb's Fabulous Pharmacies, Inc. v. Bechwith*,
    499 U.S. 155 (1980) ........................................................................ 25, 26

*Wells Fargo Bank v. Superior Court*,
    53 Cal. 3d 1082 (1991) ...................................................................... 36

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ............................................................ 31

*Williams v. Lane*,
    No. CV 14-5464 JAK (SS),
    2015 WL 1541371 (C.D. Cal. Feb. 27, 2015), *report and*
    *recommendation adopted*, 2015 WL 1549104 (C.D. Cal. Apr. 7, 2015) ........ 39

*Woo v. Home Loan Group, L.P.*,
    No. 07-CV-0202-H (POR),
    2007 WL 6624925 (S.D. Cal. July 27, 2007) .................................... 33

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) .......................................................... 39

*Yeager v. Blue Cross of California*,
    175 Cal. App. 4th 1098 (2009) ........................................................ 36

*Yniguez v. State of Arizona*,
    939 F.2d 727 (9th Cir. 1991) ............................................................ 21

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......................................... 41, 42

**STATUTES**

17 U.S.C. § 101 *et seq.* ........................................................................ 6, 9

17 U.S.C. § 106(3) ........................................................................ 2, 7, 9

17 U.S.C. § 109(a) ........................................................................ 2, 7, 9

17 U.S.C. § 301(a) ...................................................................... 2, 7, 17

Cal. Bus. & Prof. Code § 17203 ........................................................ 32

Cal. Civ. Code § 654 ........................................................................ 24

Cal. Civ. Code § 986 ................................................................................ *passim*

Cal. Civ. Code § 987 ......................................................................................... 37

Cal. Civ. Code § 3294 ................................................................................. 33, 34

**OTHER AUTHORITIES**

U.S. Const. amend. V ....................................................................................... 23

Cal. Const. art. I, § 19(a) ................................................................................ 23

H.R. Rep. No. 94-1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659 .................... 10

H.R. Rep. No. 101-514 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915 ................... 22

S. Rep. No. 94-473 (1975) ............................................................................... 10

2 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 8C.04
    (Matthew Bender rev. ed. 2015) ................................................................ 13, 14

2 William F. Patry, *Copyright Law and Practice* 1129 (1994) ........................... 13, 14

Jeffrey C. Wu, *Art Resale Rights and the Art Resale Market: A Follow-Up
    Study*, 46 J. Copyright Soc'y U.S.A. 531 (1999) ............................................ 24

**PRELIMINARY STATEMENT**

In these putative class actions, Plaintiffs seek to enforce the California Resale Royalties Act ("CRRA") against Defendants Christie's, Inc. ("Christie's") and Sotheby's, Inc. ("Sotheby's") (collectively, the "Auction Houses"). The CRRA requires owners of artworks to pay royalties to the artists who created the works when the owners resell those artworks. In the more than four years since Plaintiffs first brought their claims, this Court and an *en banc* panel of the Ninth Circuit have greatly diminished Plaintiffs' claims and the CRRA itself, by excising its unconstitutional extraterritorial clause, which applied to all sales anywhere by sellers who reside in California. *See Sam Francis Found. v. Christie's, Inc.*, 784 F.3d 1320, 1326 (9th Cir. 2015). In January, the U.S. Supreme Court finally rejected Plaintiffs' efforts to restore the CRRA's extraterritorial reach when it denied Plaintiffs' petition for writ of certiorari. *See Sam Francis Found. v. Christie's, Inc.*, No. 15-280, 2016 WL 100374, at *1 (U.S. Jan. 11, 2016) (to be published in S. Ct.).

Although the Ninth Circuit decision disposed of the vast majority of Plaintiffs' claims, Plaintiffs have not amended their Complaints to reflect only the claims that remain, nor have they added any allegations concerning the specifics of even a single alleged in-state sale. As a result, the Auction Houses have based this Joint Motion to Dismiss on the existing Complaints, disregarding the references to sales outside California as irrelevant.

The CRRA now provides that, whenever a work of fine art is resold in California, the seller or seller's agent must pay a 5% royalty to the artist. The statute thus continues to impose downstream restrictions on the resale of fine art. These restrictions run afoul of federal copyright law and the U.S. and California Constitutions. Accordingly, for multiple independent reasons, the Court should dismiss these actions.

*First*, Plaintiffs' claims are preempted by the Copyright Act of 1976. The Copyright Act strikes a delicate balance between the distribution rights of copyright

1  holders and the unencumbered resale of copyrighted works.  The Copyright Act's
2  "first-sale" doctrine enshrines this balance.  *See* 17 U.S.C. § 109(a).  The first-sale
3  doctrine gives an artist or other creator of a copyrighted work  the right to receive
4  fair market value from an initial sale, but precludes the creator from restricting
5  subsequent sales or receiving any compensation for such sales.  *See Kirtsaeng v.*
6  *John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1363 (2013).  The CRRA, however,
7  conditions an owners' right to resell the copyrighted work on the payment of
8  additional compensation to the artist who created the work.  The CRRA thus "stands
9  as an obstacle to the accomplishment and execution of the full purposes and
10 objectives of Congress" and is preempted as a matter of conflict preemption. *Stengel*
11 *v. Medtronic, Inc.*, 704 F.3d 1224, 1231 (9th Cir. 2013) (*en banc*), *cert. denied*,
12 134 S. Ct. 2839 (2014).

13      The CRRA likewise fails on the basis of express preemption.  The Copyright
14 Act includes an express-preemption provision, which prevents states from creating
15 rights that fall within its subject matter and general scope.  *See* 17 U.S.C. § 301(a).
16 The CRRA grants certain visual artists a financial right in the distribution of their
17 work.  But the Copyright Act already confers distribution rights on copyright owners.
18 17 U.S.C. § 106(3).  Because the CRRA creates rights equivalent to those protected
19 by the Copyright Act, it is expressly preempted.

20      *Second*, Plaintiffs seek to mandate a forcible transfer of property from the
21 owners of artworks and their agents to the artists who created those works and
22 previously sold them.  Such a compelled transfer of private property without just
23 compensation violates the Fifth Amendment to the U.S. Constitution and the
24 corresponding provision of the California Constitution.

25      *Third*, Plaintiffs' claim for punitive damages must also be dismissed, since
26 there is no provision in the CRRA for such relief and the legislative history indicates
27 that it was not intended by the Legislature.

28      *Fourth*, the "Estate of Robert Graham" has no capacity to sue.

*Finally*, Plaintiffs' complaints suffer from obvious pleading defects.  Plaintiffs plead "on information and belief" that they are "owed Royalties in connection with the sale of works of Fine Art." (SoCompl. ¶ 14; ChCompl. ¶ 15.)[1]  But Plaintiffs do not disclose the basis for their belief or even identify any specific sales of their works.  Instead, they merely recite the legal elements of their claims.  That is insufficient.  Likewise, although Plaintiffs allege a class period dating back more than thirty years, their claims are barred by the CRRA's three-year statute of limitations.  Plaintiffs allege that Defendants' "concealment" prevented them from "discovering the occurrence of auctions and sales for which a Royalty was due." (SoCompl. ¶ 13; ChCompl. ¶ 14.)  Plaintiffs' complaints are insufficient to invoke the discovery exception to the three-year statute of limitations, because they fail to plead when and how they discovered either the alleged concealment or their untimely claims, relying instead on facially implausible contentions that the Auction Houses neglected to identify both the location of the auctions and the items that were offered for sale when they advertised the auctions.

In sum, Plaintiffs' complaints should be dismissed in their entirety.

## STATEMENT OF FACTS

## THE CALIFORNIA RESALE ROYALTIES ACT

Per the Ninth Circuit opinion, the surviving part of the CRRA provides that "[w]henever a work of fine art is sold . . . and the sale takes place in California, the seller or the seller's agent shall pay to the artist of such work of fine art or to such artist's agent 5 percent of the amount of such sale." Cal. Civ. Code § 986(a).  An

---

[1]    All references to "SoCompl." herein are to the Complaint in *Estate of Robert Graham, et al. v. Sotheby's, Inc.*, No. 2:11-cv-08604-JHN-FFM (C.D. Cal.) (the "Sotheby's Action") (ECF No.1).  "ChCompl." refers to the Complaint in *The Sam Francis Foundation, et al. v. Christie's, Inc.*, No. 2:11-cv-08605-JHN-FFM (C.D. Cal.) (the "Christie's Action") (ECF No. 1). References to "SoECF" are to the docket in the Sotheby's Action; references to "ChECF" are to the docket in the Christie's Action.  All emphasis in quotations is added, and internal citations and quotation marks are omitted, unless otherwise noted.

artist can "waive" the right to this royalty "only by a contract in writing providing for an amount in excess of 5 percent of the amount of such sale." *Id.*  As such, the artist receives *at least* 5% and cannot choose to accept less.

Under the statute, a work of "[f]ine art" is "an original painting, sculpture, or drawing, or an original work of art in glass." *Id.* § 986(c)(2).  An "[a]rtist" is "the person who creates a work of fine art and who, at the time of resale, is a citizen of the United States, or a resident of the state who has resided in the state for a minimum of two years." *Id.* § 986(c)(1).

The CRRA provides that, if a work is sold by the seller's agent, "the agent shall withhold 5 percent of the amount of the sale, locate the artist and pay the artist." *Id*. § 986(a)(1).  If the agent cannot find the artist within 90 days, it must pay the royalty to the California Arts Council.  *Id.* § 986(a)(2).  If the seller or seller's agent does not pay the royalty, "the artist may bring an action for damages within three years after the date of sale or one year after the discovery of the sale, whichever is longer." *Id.* § 986(a)(3).

The heirs of a deceased artist may assert the artist's royalty rights for 20 years after the artist's death.  *Id.* § 986(a)(7).  Two of the artists involved in these actions are deceased.  Their rights are being asserted by the Sam Francis Foundation and the Estate of Robert Graham.  (SoCompl. ¶ 2; ChCompl. ¶¶ 2-3.)[2]

The CRRA excludes resales for "a gross sales price of less than one thousand dollars" or "a gross sales price less than the purchase price paid by the seller." Cal. Civ. Code § 986(b)(2) & (4).  As such, if the gross sales price is over $1,000 and more than the purchase price paid by the seller, the CRRA requires the seller or agent to pay a royalty of 5% of the gross sales price, without any deduction for expenses incurred in the resale (*e.g.*, commissions, shipping, insurance, etc.).

---

[2]   The Sam Francis Foundation is a plaintiff in the Christie's action, but not the Sotheby's action. The other plaintiffs are identical in the two actions.

1    Finally, the CRRA provides that "[a]ny amounts of money held by any seller
2  or agent for the payment of artists pursuant to this section shall be exempt from
3  enforcement of a money judgment by the creditors of the seller or agent." *Id.* §
4  986(a)(6).  This provision essentially creates a lien, giving the artist priority over all
5  judgment creditors.

6  **PLAINTIFFS' COMPLAINTS**

7    Plaintiffs' complaints are identical, alleging that the Auction Houses auctioned
8  works of art in California on the seller's behalf, but failed to withhold 5% of the
9  sales proceeds and remit those funds to the artists.  (SoCompl. ¶¶ 9-11; ChCompl. ¶¶
10  10-12.)   Each complaint pleads a putative class action on behalf of artists who
11  created artworks for which no royalty was paid.  (SoCompl. ¶¶ 16-25; ChCompl. ¶¶
12  17-26.)  Because of the CRRA's three-year statute of limitations, Plaintiffs request
13  sub-classes for: (1) claims based on sales in California within three years of the filing
14  of these actions; and (2) claims based on such sales three or more years before the
15  actions were filed, if the Defendant did not disclose that the sale took place in
16  California.  (SoCompl. ¶ 16; ChCompl. ¶ 17.)  The second subclass extends back to
17  1977, when the CRRA became effective.

18    The named Plaintiffs do not specify whether their claims fall within the first or
19  second subclass, or both.  Nor do they allege when or how they discovered any sales
20  that fall into the second subclass.  Plaintiffs do not even identify *any* sales – either
21  within the last three years or earlier – on which their claims are based.  Instead, they
22  allege, on undisclosed "information and belief," that they are entitled to royalties for
23  unidentified sales.  They also assert that, "at this time, [they] can only surmise the
24  total amount of Royalties owed to them." (SoCompl. ¶ 14; ChCompl. ¶ 15.)

25    Plaintiffs allege that Defendants failed to tell artists about sales that gave rise
26  to royalty obligations and "affirmatively engaged in a pattern of conduct intended to
27  conceal . . . circumstances [that] entitled plaintiffs and class members to a Royalty."
28  (SoCompl. ¶ 12; ChCompl. ¶ 13.)  This "pattern of conduct" allegedly consisted of a

5

1  failure to disclose the location of sales in Defendants' public auction catalogs or to
2  otherwise identify in the catalogs those lots "for which the artist will be entitled to
3  the Royalty." (SoCompl. ¶ 12; ChCompl. ¶ 13.)

4      Plaintiffs allege that Defendants' nondisclosures prevented them and other
5  putative class members from discovering "the occurrence of auctions and sales for
6  which a Royalty was due." (SoCompl. ¶ 13; ChCompl. ¶ 14.)  Plaintiffs, however, do
7  not explain when or how they discovered Defendants' alleged concealment or
8  obtained information about auctions and sales on which to base their CRRA claims.
9  The complaints each allege a violation of California Business and Professions Code
10 section 17200, the Unfair Competition Law, based on Defendants' alleged "willful
11 failure to comply with the [CRRA]." (SoCompl. ¶¶ 33-46; ChCompl. ¶¶ 34-47.)
12 Plaintiffs seek: (1) damages consisting of royalties and interest; (2) punitive damages;
13 (3) attorneys' fees; and (4) injunctive relief.  (SoCompl. at 10-11; ChCompl. at 10.)

14                           **LEGAL STANDARD**

15      To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege
16 "sufficient factual matter, accepted as true, to state a claim to relief that is plausible
17 on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*
18 *Twombly*, 550 U.S. 544, 570 (2007)). "However, the Court need not accept as true
19 [t]hreadbare recitals of the elements of a cause of action, supported by mere
20 conclusory statements." *City of Inglewood v. Teixeira*, 2015 WL 5025839, at *1
21 (C.D. Cal. Aug. 20, 2015) (dismissing complaint without leave) (Fitzgerald, J.).

22                              **ARGUMENT**

23 **I.     THE COPYRIGHT ACT OF 1976 PREEMPTS PLAINTIFFS' CLAIMS**

24      Plaintiffs' CRRA claim must be dismissed because it is preempted by the
25 Copyright Act of 1976 (the "Copyright Act").  17 U.S.C. §§ 101 *et seq.*  Congress
26 enacted the Copyright Act of 1976 with the "express objective of creating national,
27 uniform copyright law by broadly pre-empting state statutory and common-law
28 copyright regulation." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740

6

(1989).  The Copyright Act strikes a careful balance between the distribution rights of copyright holders (such as visual artists) and the free flow of copyrighted works. A crucial component of this balance is the "first-sale" doctrine, which recognizes a creator's exclusive right to sell his or her work, 17 U.S.C. § 106(3), but also limits the restraints that the creator can place on its subsequent alienation.  *See* 17 U.S.C. § 109(a).

Since the issuance of the Court's first decision to dismiss, both the Supreme Court and the Ninth Circuit have reiterated the "first sale" principles of the Copyright Act, rejecting "the absurd result that the copyright owner can exercise downstream control even when it authorized the . . . first sale," as discussed below. *Kirtsaeng*, 133 S. Ct. at 1366; *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 695 (9th Cir. 2015) (quoting *Kirtsaeng*, 133 S. Ct. at 1366), *cert. dismissed*, 136 S. Ct. 445 (2015).

The CRRA runs headlong into the "structure and purpose" of the Copyright Act's carefully designed regime.  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007).  Under the first-sale doctrine, once a visual artist sells a painting or sculpture, the artist loses the ability to control further sales.  *See Omega S.A.*, 776 F.3d at 695 ("copyright holders cannot use their rights to fix resale prices in the downstream market" or otherwise "exercise downstream control after authorizing a first sale") (quoting *Kirtsaeng*, 133 S. Ct. at 1366).  Because the CRRA conditions the right to resell art works on the payment of royalties and gives the artist a financial interest in each resale, the CRRA conflicts with the Copyright Act.

In addition, because the CRRA creates distribution rights equivalent to those protected by the Copyright Act, it runs afoul of the Copyright Act's separate express-preemption provision, 17 U.S.C. § 301(a).

For both of these reasons, Plaintiffs' claims are preempted here.

A.   **Plaintiffs' Claims Conflict With The First-Sale Doctrine**

Conflict preemption arises "when a state requirement stands as an obstacle to

7

1  the accomplishment and execution of the full purposes and objectives of Congress."

2  *Stengel*, 704 F.3d at 1231.  Congress intended federal copyright legislation to have a

3  sweeping preemptive scope.  *Reid*, 490 U.S. at 740.  Accordingly, state laws must

4  "yield to the extent that [they] clash[] with the balance struck by Congress," a federal

5  judgment that "the States may [not] second-guess."  *Bonito Boats, Inc. v. Thunder*

6  *Craft Boats, Inc.*, 489 U.S. 141, 152, 156 (1989) (noting, in patent context, that

7  "[s]tates may not offer . . . protection to intellectual creations which would otherwise

8  remain unprotected as a matter of federal law"); *Sony Corp. of Am. v. Universal City*

9  *Studios, Inc.*, 464 U.S. 417, 429 (1984) (recognizing that "it is Congress that has

10  been assigned the task of defining the scope of the limited monopoly that should be

11  granted to authors" and Congress has accordingly attempted to strike a "difficult

12  balance" in the Copyright Act).

13      In the first-sale doctrine, Congress enshrined a careful balance between creator

14  control and free trade in copyrighted works.  By imposing additional downstream

15  obligations on resellers of copyrighted works, the CRRA upsets this equilibrium.

16      **1.    The First-Sale Doctrine Forbids**
           **<u>Restraints On the Resale of Copyrighted Works</u>**
17

18      The first-sale doctrine precludes the creator of a copyrighted work from

19  controlling the resale of his work once he has initially transferred title.  "The whole

20  point of the first sale doctrine is that once the copyright owner places a copyrighted

21  item in the stream of commerce by selling it, he has exhausted his exclusive statutory

22  right to control its distribution."  *Quality King Distribs., Inc. v. L'Anza Research*

23  *Int'l, Inc.*, 523 U.S. 135, 152 (1998); *see also Kirtsaeng*, 133 S. Ct. at 1363; *UMG*

24  *Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1179 (9th Cir. 2011).  In other words,

25  once the copyrighted item is sold, the author has exhausted all of his downstream

26  rights in the item.  *Kirtsaeng*, 133 S. Ct. at 1355.

27      As the Supreme Court has emphasized, "for at least a century the 'first sale'

28  doctrine has played an important role in American copyright law."  *Kirtsaeng*, 133 S.

1   Ct. at 1363.  The doctrine's "impeccable pedigree" traces back at least as far as Lord

2   Coke's seventeenth century writings on "the common law's refusal to permit

3   restraints on the alienation of chattels." *Id.*  "A law that permits a copyright holder

4   to control the resale or other disposition of a chattel once sold is . . . against Trade

5   and Traffic, and bargaining and contracting." *Id*.  Congress codified the first-sale

6   doctrine in the Copyright Act of 1909, subsequently reaffirming it in the Copyright

7   Act of 1976. *Id.* at 1360.

8        The Copyright Act grants an artist "exclusive rights" over the first sale of a

9   copyrighted work.  The artist may "distribute copies . . . of the copyrighted work to

10  the public by sale or other transfer of ownership."   17 U.S.C. § 106(3).  But it

11  carefully circumscribes this right through a "first-sale" provision:

12        Notwithstanding the provisions of section 106(3), the owner of a
          particular copy . . . lawfully made under this title . . . is entitled, without
13        the authority of the copyright owner, to sell or otherwise dispose of the
          possession of that copy.
14

15  17 U.S.C. § 109(a).[3]  "The practical effect of this language is to significantly

16  circumscribe a copyright owner's exclusive distribution right 'only to the first sale of

17  the copyrighted work'[.]" *Adobe Sys. Inc. v. Christenson*, 2015 WL 9487887, at *4

18  (9th Cir. Dec. 30, 2015) (to be published in F.3d) (quoting *Quality King*, 523 U.S. at

19  141, 152).

20        The Copyright Act proscribes an artist from controlling a copyrighted item's

21  downstream distribution, and bars him or her from dictating the terms of any

22  subsequent sale.  "[O]nce a copyright owner consents to release a copy of a work to

23  an individual or, . . . the copyright owner relinquishes *all rights* to the particular

24  copy." *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 373

25  (6th Cir. 2007).  Thus, "once a copy of [a copyrighted work] has been lawfully sold

26  ─────────────────

27  [3]      The Copyright Act defines "copies" to include "the material object, other than
    a phonorecord, in which the work is first fixed."  17 U.S.C. § 101.  An original
28  painting or sculpture is thus a "copy" within the meaning of the Copyright Act.

1   or, . . . the buyer of that copy and subsequent owners are free to dispose of it *as they*

2   *wish*." *Kirtsaeng*, 133 S. Ct. at 1355.  Indeed, stressing the sweeping breadth of the

3   first-sale doctrine, the Supreme Court has ridiculed as "absurd" the position that a

4   "copyright owner can exercise downstream control even when it authorized the . . .

5   first sale." *Id.* at 1366.[4]  After the author has made his first sale, he has exhausted his

6   last right in the copyrighted item, and he has no right in the item thereafter.  *See id.* at

7   1355.[5]  This principle precludes a copyright owner from claiming any right to a

8   royalty on any subsequent sale; a copyright owner must obtain any royalties he seeks

9   from his creation upon its first sale.  *See Sony Corp.*, 464 U.S. at 429 ("The

10  copyright law, like the patent statute, makes reward to the [creator] a secondary

11  consideration."); *Bloomer v. Millinger*, 68 U.S. 340, 350 (1863) (holding under

12  parallel patent-law first-sale doctrine that owners "are entitled to but one royalty for

13  a patented machine"); *San Disk Corp. v. Round Rock Research LLC*, 2014 WL

14  2700583, at *5 n.4 (N.D. Cal. June 13, 2014) (equating copyright and patent first-

15  sale doctrines); *PNY Techs., Inc. v. SanDisk Corp.*, 2012 WL 1380271, at *5 (N.D.

16  Cal. Apr. 20, 2012) ("A patent holder may not collect a double royalty, that is,

17  collect a royalty *from both a licensee and a [downstream] purchaser* of the

18  licensee's product under the same patent for the same patented product without

19

---

20  [4]      The legislative history of the Copyright Act confirms the doctrine's expansive
21  sweep.  *See* H.R. Rep. No. 94-1476, at 79 (1976), *reprinted in* 1976 U.S.C.C.A.N.
    5659, 5693 ("Under [§109(a), the first sale doctrine], . . . the copyright owner's
22  exclusive right of public distribution would have *no effect* upon anyone who owns a
    'particular copy . . . lawfully made under this title' and who wishes to transfer it to
23  someone else . . . .  Thus, for example, the outright sale of an authorized copy of a
    book frees it from any copyright control over its resale price *or other conditions of*
24  *its future disposition*."); *see also* S. Rep. No. 94-473 (1975).

25  [5]      The Ninth Circuit recently applied *Kirtsaeng*'s reasoning to reject a copyright
26  infringement claim against Costco based on the first sale doctrine, noting that the
    plaintiff's "right to control importation and distribution of its copyrighted Omega
27  Globe expired after [the] authorized first sale, and Costco's subsequent sale of the
    watches did not constitute copyright infringement." *Omega*, 776 F.3d at 695.
28

---

AUCTION HOUSE DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS

1    violating the patent exhaustion doctrine.”); *see also PSC Inc. v. Symbol Techs., Inc.*,

2    26 F. Supp. 2d 505, 511 (W.D.N.Y. Oct. 22, 1998) (holding patent holder’s

3    collection of royalties from first licensee and then from downstream customer a

4    patent misuse).

5         Plaintiffs will likely try to evade the well-established principles reiterated in

6    *Quality King* and *Kirtsaeng* by stressing that the Supreme Court was affirming the

7    first-sale doctrine’s application to works made outside and/or imported into the

8    United States, but “[t]his distinction is no longer relevant because the Supreme Court

9    has since held that the first sale doctrine applies with equal force to goods made and

10   sold abroad” as well as copyrighted works sold in the United States, including,

11   obviously, California. *Adobe Sys. Inc.* 2015 WL 9487887, at *10 & n.5.

12        **The CRRA Conflicts With The First-Sale Doctrine**

13        By conferring an unwaivable right on copyright owners to receive a royalty

14   from any resale of their works of fine art, and obligating resellers of fine art to locate

15   and compensate the original copyright owner, the CRRA restrains the very

16   downstream transactions that the Copyright Act intends to be unrestricted.[6]  Indeed,

17   the CRRA explicitly applies *only* to such downstream sales.  *See* Cal. Civ. Code §

18   986(b)(1) (requirements do not apply “[t]o the initial sale of a work of fine art”).

19   And not only does the Act apply beyond the *first* sale, it controls *all future sales* until

20   twenty years after the artist’s death, “[w]henever a work of fine art is sold and . . .

21

22

---

23   [6]    The CRRA even requires the seller or seller’s agent to identify whether an
24   artist is entitled to a resale royalty, by, among other things, determining whether the
     artist “is a citizen of the United States, or a resident of the state who has resided in
25   the state for a minimum of two years.”  Cal. Civ. Code § 986(c)(1).  Citizenship
     status is not always simple to determine, and residency over the course of multiple
26   years is even more difficult to track, especially since the CRRA is not limited to
     artists in California.  And if the artist has died, a seller must first determine that fact
27   and then seek out the artist’s “heirs, legatees, or personal representative.”  *Id*. §
28   986(a)(7).

---

11

1 the sale takes place in California." *See id.* § 986(a). The CRRA thus violates the

2 first-sale doctrine, disrupting the Copyright Act's delicate equilibrium.

3        For over a century, the Supreme Court has recognized that a copyright

4 owner's financial rights in the sale of a particular copy of a work are limited to

5 receipt of a "satisfactory price" for an initial transfer. *Bobbs-Merrill Co. v. Straus*,

6 210 U.S. 339, 349-50 (1908). The first-sale doctrine "rest[s] on the principle that the

7 copyright owner is entitled to realize no more and no less than the full value of each

8 copy . . . upon its disposition." *Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*,

9 832 F. Supp. 1378, 1389 (C.D. Cal. 1993); *see also Brilliance Audio*, 474 F.3d at 373

10 (stating that the aim of copyright distribution rights are achieved once "the owner has

11 received the desired compensation" for a particular copy).

12        But the CRRA enables an artist to dictate the terms of a sale in California—to

13 wit, requiring 5% of the sale proceeds be remitted to him or her. The Supreme Court

14 has recently observed that such a regime would be a blatant violation of the first-sale

15 doctrine. *Kirtsaeng*, 133 S. Ct. at 1366 ("Museums, for example, are not in the habit

16 of asking their . . . counterparts to check with the heirs of copyright owners before

17 sending, *e.g.*, a Picasso on tour."). Once the creator places the art "in the stream of

18 commerce by selling it, he has exhausted his exclusive statutory right to control its

19 distribution." *Quality King*, 523 U.S. at 152; *see also Omega*, 776 F.3d at 695 ("right

20 to control . . . distribution . . . expired after that authorized first sale"). The

21 Copyright Act forces a creator to "relinquish[] *all* rights to that particular copy" once

22 he "consents to release [the copy] to an individual." *Brilliance Audio*, 474 F.3d at

23 373. *See Kirtsaeng*, 133 S. Ct. at 1355 (the Copyright Act provides that the creator

24 sells all of his rights—with no strings attached, and with no further obligation to

25 anyone—in the first sale of his art).

26        The first-sale doctrine ensures that the owner of a copyrighted work may

27 transfer it free from statutory constraints. *Brilliance Audio*, 474 F.3d at 371. The

28 CRRA, however, permits subsequent owners to transfer a work of fine art only if

1   they pay a 5% royalty to the copyright owner (or to the California Arts Council if the
2   copyright owner cannot be located).  The statute thus imposes a constraint on resale,
3   in direct contravention of the Copyright Act.  Leading treatises thus have concluded
4   that the Copyright Act preempts the CRRA.  *See* 2 Melville & David Nimmer,
5   *Nimmer on Copyright* § 8C.04 [c][1] (Mathew Bender rev. ed. 2015) ("The
6   [CRRA] . . . is designed precisely to inhibit the privilege to distribute those works of
7   authorship to which it pertains. . . . It would seem to follow necessarily that the state
8   law is pre-empted."); *see also* 2 William F. Patry, *Copyright Law and Practice* 1129
9   n.235 (1994) ("[T]he [resale royalty] right clearly conflicts with § 109 of the
10  Copyright Act, which generally exhausts the copyright owner's rights with respect to
11  a particular copy once that copy is lawfully distributed.").

12      Moreover, the complaints here demonstrate that Plaintiffs seek to restrain the
13  free alienation of copyrighted works in violation of Section 109(a).  Notwithstanding
14  that Plaintiffs previously sold their copyrighted works, they allege that Defendants
15  failed to make royalty payments on unspecified subsequent sales.  (SoCompl. ¶¶ 11,
16  27; Ch.Compl. ¶¶ 12, 28.)  In direct contravention of Section 109(a), which prohibits
17  a creator from setting terms subsequent to the first sale, the complaints assert that
18  Defendants were "required to withhold at the time of the auction or sale, and then
19  pay to the artist (or agent or estate thereof) within 90 days, five percent of the
20  amount of such sales." (SoCompl. ¶ 10; ChCompl. ¶ 11.)  If claims such as these
21  were not preempted, the intent of Congress in creating national, uniform copyright
22  law would be subverted, an "intolerable consequence[]" and "absurd result."
23  *Kirtsaeng*, 133 S. Ct. at 1366.

24      The Ninth Circuit's decision in *Morseburg v. Balyon*, 621 F.2d 927 (9th Cir.
25  1980), does not save the CRRA from preemption.  *Morseburg*, in addressing conflict
26  preemption—not express preemption—"emphasize[d] that this case concerns the
27  preemptive effect of the 1909 Act only," not the 1976 Act.  *Id.* at 975, 976.  To be
28  sure, the Ninth Circuit subsequently observed that the first-sale doctrine in the 1909

13

Act and the current § 109(a) are "substantively identical."  *UMG Recordings*, 628 F.3d at 1182 n.7.   But the *Morseburg* Court emphasized more than once that its "holding, as well as [its] reasons, to repeat, [were] addressed to the 1909 Act only." *Morseburg*, 621 F.2d at 975.   Indeed, Judge Nguyen has already held that because *Morseburg* "concerned the preemptive effect of the 1909 Copyright Act *only*"— albeit in the context of addressing the dormant Commerce Clause—this Court "is not bound by *Morseburg*."  *Estate of Graham v. Sotheby's Inc.*, 860 F. Supp. 2d 1117, 1122 (C.D. Cal. 2012) (emphasis in original).   This Court is likewise not bound by the decision in interpreting the current Copyright Act.

More fundamentally, subsequent Supreme Court precedent has severely eroded the foundation of *Morseburg*, which was decided more than thirty-five years ago.   *Morseburg* stated that, "[t]echnically speaking [resale royalty] acts in no way restrict the transfer of art works" because "[n]o lien to secure the royalty is attached to the work itself, nor is the buyer made secondarily liable for the royalty."  621 F.2d at 977-78.   Intervening Supreme Court decisions, however, have overturned this restrictive interpretation of the first-sale doctrine.   In *Quality King*, the Supreme Court overturned the "cramped reading" that the Ninth Circuit had endorsed, emphasizing that Congress meant to give the doctrine a "broad scope." 523 U.S. at 152 (overruling 98 F.3d 1109 (9th Cir. 1996)).   And the *Kirtsaeng* Court rejected as "absurd" the argument previously embraced by the Ninth Circuit that "the copyright owner can exercise downstream control" after the first sale.   133 S. Ct. at 1360, 1366.[7]

---

[7]   Indeed, leading treatises criticize *Morseburg* as no longer valid.   *See* 2 Melville & David Nimmer, *Nimmer on Copyright* § 8C.04 [c][1] (Mathew Bender rev. ed. 2015) ("If the logic of *Morseburg* were followed, it would mean that legislatures, could, as a matter of state law, tinker with the Copyright Act in a variety of damaging ways."); *accord* 2 William F. Patry, *Copyright Law and Practice* 1129 n.235 (1994).

1    These Supreme Court decisions establish that the first-sale doctrine does more
2    than merely prevent outright bars on the transfer of copyrighted works, as the Ninth
3    Circuit had concluded in *Morseburg*.   Rather, the Copyright Act forbids statutory
4    provisions that vest rights in copyright holders extending past the first sale and
5    imposing downstream obligations on resellers.   As elucidated in recent Supreme
6    Court decisions, *Morseburg* does not control this case.

7    *Morseburg* is at odds with later Supreme Court precedent for another reason:
8    *Morseburg* acknowledged the many ways in which a resale royalty might diminish
9    the market for fine art, but then "explicitly" declined to take them into account.  621
10   F.2d at 978.   In *Kirtsaeng*, however, the Supreme Court made clear such potential
11   ramifications bear directly on the doctrine's scope and cannot be ignored.  *See* 133 S.
12   Ct. at 1366-67.  The Supreme Court held that exempting transactions from the first
13   sale doctrine would produce "intolerable consequences," such as "requir[ing]
14   museums to obtain permission from the copyright owners before they could display
15   the work," yielding administrative headaches "if the artist retained the copyright, if
16   the artist cannot be found, or if a group of heirs is arguing about who owns which
17   copyright." *Id.* at 1365-66.

18   A regime requiring prospective sellers and/or buyers to locate the copyright
19   owner before conducting a downstream transaction would amount to "a dramatic
20   change" in the first-sale doctrine that "American copyright law has long applied." *Id.*
21   at 1366.  In sum, *Kirtsaeng* rejected a narrow interpretation of the first sale doctrine
22   in part because of the "complex permission-verifying process" that such an
23   interpretation would produce generally (not just for the specific transaction at issue
24   in that case).  *Id.*

25   So too here.  To comply with the CRRA, auction houses must determine how
26   much the seller originally paid to obtain the artwork, identify the artist, and ascertain
27   the artist's citizenship – none of which is information possessed by the auction
28   houses and all of which must be obtained from a third-party (the seller), who has

1   ample reason not to provide accurate information, and Auction Houses have no
2   means to verify or compel such information.  For each qualifying sale, the auction
3   house must locate the artist and arrange payment or, if unable to do so, transfer the
4   royalty to the California Arts Council.  Uncertainty clouds each transaction, with the
5   auction houses' potential liability extending at least three years after the sale, and the
6   artist's rights inuring to his or her heirs for twenty years after death.  *See generally*
7   *supra* pp. 4, 11-13.

8        Significantly, the *en banc* Ninth Circuit decision addressed head-on—and
9   condemned—the CRRA's consequences for sellers and sellers' agents.  In
10  simultaneously rejecting Plaintiffs' attempts to analogize the CRRA to a tax law and
11  Judge Reinhardt's assertion in his partial concurrence that the CRRA is "only a
12  minor regulation of the proceeds," the Ninth Circuit described the "additional
13  procedural requirements for agents of sellers" imposed by the CRRA: "The agent
14  must withhold the royalty, undertake affirmative efforts to locate the artist and, once
15  found, pay the artist." *Sam Francis Found.,* 784 F.3d at 1324 & n.1.  In stark contrast
16  to the analysis of *Morseburg*, the *en banc* Ninth Circuit concluded that "[t]he Act's
17  ***regulation of the conduct of the seller and the seller's agent is neither 'minor' nor***
18  ***a 'regulation of the proceeds' alone.***" *Id.*

19       Enforcement of the CRRA thus has the potential to impose prohibitive
20  restraints on art sellers (and their agents) and impede "the free flow of ideas,
21  information, and commerce" that the Copyright Act is designed to promote.  *Sony*
22  *Corp.*, 464 U.S. at 429.  The obstacles erected by the CRRA are all the more
23  prominent given that no other state has adopted a similar royalty statute, rendering
24  the CRRA a singular threat to the Copyright Act's "express objective of creating
25  national, uniform copyright law." *Reid*, 490 U.S. at 740.

26       Plaintiffs will likely argue, relying on *Morseburg* (despite its questionable
27  viability), that the first-sale doctrine only precludes *artists* from encumbering
28  subsequent art sales, but the CRRA does not give the artists control over later sales

16

because the CRRA, not the artist, imposes the royalty.  Plaintiffs' argument is doubly misguided: first, it disregards the law establishing that the state of California, through the CRRA, cannot interfere with the "structure and purpose" of the Copyright Act, (*see supra* p. 7); and second, it overlooks that there is no state enforcement mechanism outlined in the CRRA—instead, the CRRA explicitly provides *artists* with the power to use the CRRA to collect the royalty.  *See* Cal. Civ. Code § 986(a)(3) ("If a seller or the seller's agent fails to pay an artist  the amount equal to 5 percent of the sale of a work of fine art by the artist . . . the artist may bring an action for damages[.]"); *Sam Francis Found.*, 784 F.3d at 1324 n.1 ("If the seller or the seller's agent fails to locate the artist adequately, *the artist* may sue for damages plus attorney fees.").  Given that the CRRA expressly provides artists with the power to enforce it and collect the royalty in downstream sales, there is no basis to assert that the artists are somehow lacking "control" over later sales.  Thus, California's statute is preempted by the first-sale doctrine.

## B.     The Copyright Act Expressly Preempts Plaintiffs' Claims.

In *addition* to the first-sale provision, the Copyright Act includes an express-preemption provision:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  Express preemption is assessed under a two-part test.  First, the Court must "determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Ent'mt, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).  Second, the Court "must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of

17

1  copyright holders."  *Id.* at 1138; *see also Ryoo Dental, Inc. v. Han*, 2015 WL
2  4208580, at *2 (C.D. Cal. July 9, 2015) (applying *Laws* two-prong test to dismiss
3  state law claims as preempted by Copyright Act on 12(b)(6) motion).

4      Applying that test, Plaintiffs' claims are expressly preempted.  Plaintiffs allege
5  that the Auction Houses violated state law by failing to compensate them for
6  distribution of their copyrighted work.  But the Copyright Act already provides a
7  copyright owner with distribution rights.[8]  The CRRA thus impermissibly creates
8  rights "equivalent to" those protected by the Copyright Act.

9      **1.   Plaintiffs' Claims Fall Within The**
          **Subject Matter of The Copyright Act**
10

11     Plaintiffs' claims rest on the alleged failure to pay required royalties from the
12  resale of fine art.  As discussed above, the "fine art" regulated by the CRRA is also
13  regulated by the Copyright Act.  *See supra* n.3.  Plaintiffs' claims thus easily "fall[]
14  within the subject matter of copyright," satisfying the first prong of the express-
15  preemption test.  *See Laws*, 448 F.3d at 1137.

16     **2.   Plaintiff Allege Violations Of State-Law Rights**
          **Equivalent To The Rights Contained In The Copyright Act**
17

18     If a state-law claim falls within the subject matter of the Copyright Act, it is
19  preempted unless it "protect[s] rights which are qualitatively different from the
20  copyright rights." *Id.* at 1143.  "The state claim must have an extra element which
21  changes the nature of the action." *Id.*; *see also Borden v. Horwitz*, 2012 WL 6618196,
22  at *3 (C.D. Cal. Dec. 19, 2012) (Fitzgerald, J.) (dismissing restitution claim based on
23  alleged "unlawful sales" and "distribution" of works because "[t]hese rights are not
24  qualitatively different, and Borden's restitution claim does not have an extra element

---

25  [8]     Under both the Copyright Act and the CRRA, an artist automatically obtains
26  rights by simply creating an original work.  The 1976 Copyright Act eliminated the
    requirement of registration, so federal copyrights now flow from mere creation of an
27  original work, and the CRRA's right to a 5% resale royalty attaches without the need
28  for any steps beyond creation of a work of "fine art."

that changes the nature of the action"). Courts "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also Ray v. ESPN, Inc*., 783 F.3d 1140, 1144 (8th Cir. 2015) (where state-law rights were "infringed by the mere act of . . . distribution . . . of [plaintiff's] performances, his state-law rights are equivalent to the exclusive rights within the general scope of coypright"). Attention must be paid to the "essence" of the state-law claim; the addition of elements to a federal copyright claim is insufficient to avoid preemption if the state cause of action is simply "part and parcel of a copyright claim." *Laws*, 448 F.3d at 1144.

Invoking a state-law cause of action, Plaintiffs here assert claims that are based on their status as the creators of works protected by the Copyright Law and are thus part and parcel of copyright claims. The Copyright Act confers on copyright owners "the exclusive rights . . . to distribute their works by sale or rental." *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1106–07 (9th Cir. 2010). A copyright owner's financial interest in a copyrighted work is subsumed within the broader distribution right. *Brilliance Audio*, 474 F.3d at 373.

The CRRA thus simply creates an additional exclusive-distribution right—equivalent to that protected by the Copyright Act—and runs headlong into the preemptive force of § 301(a). The "essence" of Plaintiffs' claims is that, by failing to compensate them with royalty fees, the Auction Houses violated their right to distribute their works of art. This is a garden-variety federal copyright claim. *See Vernor*, 621 F.3d at 1106-07.[9]

_____

[9]    Plaintiffs may argue that the CRRA is not expressly preempted because it concerns not the artist's copyright, but the artist's right to a "levy" imposed by the state on the seller's gross receipts, so that preemption will undermine our country's tax system. This argument was emphatically *rejected* by the Ninth Circuit when it held that the CRRA "does not impose a tax; it regulates conduct among private parties" because it "requires the seller or the seller's agent to pay a royalty to the

*(cont'd)*

The elements added to a CRRA cause of action do not save Plaintiffs' claims from preemption. "Although the elements of [Plaintiffs'] state law claims may not be identical to the elements in a copyright action, the underlying nature of [Plaintiffs'] state law claims is part and parcel of a copyright claim." *Laws*, 448 F.3d at 1144. None of the "extra element[s]" of Plaintiffs' CRRA claims—the presence of a California sale, a sales price of over $1000, and a sales price greater than the seller's purchase price—"transform[s] the nature of the action" into anything more than a copyright claim. *Id.*

The CRRA thus conflicts with the Copyright Act's express preemption provision. As with the first-sale provision, the federal copyright statute, rather than the state's CRRA, must prevail.

### 3.   *Baby Moose* Does Not Control This Case

In *Baby Moose Drawings, Inc. v. Valentine*, 2011 WL 1258529, at *4 (C.D. Cal. Apr. 1, 2011), Judge Nguyen held that the Copyright Act's express preemption clause did not provide an unequivocal basis to remove that case to federal court. But that decision did not address whether the Copyright Act preempts the CRRA under the more limited preemption principles presented where federal jurisdiction is not contested. Indeed, at the hearing before Judge Nguyen in this case, the Court acknowledged the inapplicability of *Baby Moose* here because it is "limited [to] a remand situation," and rejected Plaintiffs' reliance on it. (SoECF No. 34/ChECF No. 39 at 27:7-10.) Judge Nguyen's reaction to Plaintiffs' argument was correct, for the following reasons.

*First*, in *Baby Moose*, Judge Nguyen considered only whether the Copyright Act "completely preempted" the CRRA, 2011 WL 1258529, at *2, not whether the Copyright Act defensively preempted the CRRA. "Complete preemption (a

---

*(cont'd from previous page)*
artist, a private party, not to the government" and "[n]othing of the sort is required by an ordinary tax law." *Sam Francis Found., Inc.*, 784 F.3d at 1324.

jurisdictional issue) converts a well-pleaded state law claim into an inherently federal claim for jurisdictional purposes; defensive preemption (a substantive issue) does not enable removal, but does constitute a complete defense to a state law claim." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 689 n.8 (9th Cir. 2007). "The general rule is that a defense of federal preemption of a state-law claim, even conflict preemption under [a federal statute], is an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a)." *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 n.6 (9th Cir. 2011).

The *Baby Moose* decision necessarily reflects the Ninth Circuit's strong presumption against removal, particularly where removal is based on a claim of complete preemption. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Judge Nguyen did not need to fully decide the preemption issue, because "any doubt about the right of removal require[d] resolution in favor of remand." *Id*. Thus, while Judge Nguyen was constrained by complete preemption principles in the context of *Baby Moose*, no such principles constrain the analysis here, where Defendants have conclusively demonstrated that the Copyright Act defensively preempts the CRRA.

*Second*, in *Baby Moose*, Judge Nguyen had no occasion to analyze whether the Copyright Act preempts the CRRA under principles of conflict preemption. *Baby Moose*, 2011 WL 1258529, at *2-3. As demonstrated above, it does.

Moreover, to the extent *Baby Moose* concluded that the CRRA's 5% resale royalty right is qualitatively different from the rights granted to copyright holders and thus not expressly preempted, *id.,* Defendants respectfully submit that conclusion is inconsistent with Supreme Court and Ninth Circuit precedent, and this court should thus decline to follow it. *See Yniguez v. State of Ariz.*, 939 F.2d 727, 736-37 (9th Cir. 1991) (district court decisions are not binding on sister district courts, even within the same district). Judge Nguyen relied on *Durgom v. Janowiak,* 74 Cal. App. 4th 178, 186-87 (1999), for the proposition that "a state-law right to

1 receive royalties pursuant to contract is not equivalent to any of the exclusive rights
2 secured by a federal copyright." *Baby Moose,* 2011 WL 1258529, at *3. In *Durgom,*
3 however, the essence of the plaintiff's claims involved an extra element—the
4 personal agreement between two parties to pay for use of the song, 74 Cal. App. 4th
5 at 181. Here, by contrast, there is no such personal agreement. The obligation to
6 pay a 5% resale royalty is imposed by law. More importantly, it directly conflicts
7 with the limits imposed by the first sale doctrine. *Durgom* is therefore inapposite
8 here.

9      *Finally,* although Judge Nguyen cited certain portions of legislative history in
10 support of her remand order, that history states nothing more than that the *VARA*—
11 not the Copyright Act—did not preempt state resale royalty legislation. *Baby Moose,*
12 2011 WL 1258529, at *3. In considering enactment of the VARA, Congress
13 explained that "[s]tate artists' rights laws that grant rights not equivalent to those
14 accorded under the proposed law are not preempted . . . . For example, the law will
15 not preempt a cause of action for a misattribution of a reproduction of a work of
16 visual art or for a violation of a right to a resale royalty." *See* H.R. Rep. No. 101-514,
17 at 20 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6931. This comment did not
18 address preemption under the 1976 Copyright Act generally, let alone the limited
19 distribution right and the first sale doctrine. Indeed, nowhere did the subsequently
20 enacted VARA amend Section 301(a), which is the preemption provision at issue.

21      In sum, neither conflict nor ordinary express preemption were addressed, let
22 alone decided, in *Baby Moose.* *Baby Moose* also reflected the Ninth Circuit's strong
23 presumption against removal from state court, and presented Judge Nguyen with no
24 occasion to consider whether the Copyright Act preempts the CRRA under the more
25 limited preemption principles presented here, where federal jurisdiction is not
26 contested. Accordingly, both express and conflict preemption require preemption of
27 the CRRA, and neither conflicts with Judge Nguyen's prior decision in *Baby Moose.*
28

## II.  THE CRRA EFFECTS A TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE U.S. AND CALIFORNIA CONSTITUTIONS

The Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V.[10]  This constitutional guarantee "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).[11]  The CRRA stands in direct contradiction to this principle: it confiscates the private property of certain parties and transfers that property to other private individuals for their sole use and benefit, providing no discernable public benefit.  Under well-established Takings Clause jurisprudence, the CRRA is an impermissible taking of private property without just compensation.

The Ninth Circuit employs a two-step analysis to determine whether a taking has occurred.  First, the plaintiff must have a constitutionally protected property interest. *Schneider I*, 151 F.3d at 1198.  Second, the court must "determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment." *Id.*  The CRRA meets both criteria:  under fundamental notions of property law, both the artworks at issue and a five percent interest in the proceeds from the sale of those works are "private property" warranting Fifth Amendment

---

[10]     This provision—the Takings Clause–"has long been held to apply to the States through the Due Process Clause of the Fourteenth Amendment." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998) ("*Schneider I*"), *vacated*, 345 F.3d 716 (9th Cir. 2003).

[11]     The California Constitution provides: "Private property may be taken *or damaged* for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Cal. Const. art. I, § 19(a).  The California Supreme Court has acknowledged the "broader protections granted landowners by the addition of 'or damaged' language of our state's compensation clause," *HFH Ltd. v. Superior Court*, 15 Cal. 3d 508, 517 (1975), but has generally construed the federal and state takings clauses "congruently." *San Remo Hotel, L.P. v. City & Cty. of S.F.*, 27 Cal. 4th 643, 664 (2002) (collecting cases).

23

1 protection; and because the CRRA effects a direct appropriation of five percent of

2 the proceeds, it is a *per se* taking of private property.  Where there has been a

3 "taking" of "private property," the Fifth Amendment requires "just compensation"

4 and that the property be put to public use.  *Brown v. Legal Found. of Wash.*, 538 U.S.

5 216, 231-32 (2003).  As the CRRA provides no compensation, it violates the Fifth

6 Amendment and the California Takings clause.[12]

7 ## A.   The CRRA Confiscates Private Property

8      "[T]he existence of a property interest is determined by reference to 'existing

9 rules or understandings that stem from an independent source such as state law.'"

10 *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of*

11 *State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  Under California law, "[p]roperty is

12 a broad concept that includes 'every intangible benefit and prerogative susceptible of

13 possession or disposition.'" *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003);

14 *see also* Cal. Civ. Code § 654 (ownership of property includes "the right . . . to

15 possess and use it to the exclusion of others").[13]

16 _____

17 [12]      In addition to providing no compensation, the CRRA is also invalid because it
18 confiscates private property to benefit private individuals, not the public.  *See Kelo v.
   City of New London*, 545 U.S. 469, 477 (2005) ("[T]he City would no doubt be
19 forbidden from taking petitioners' land for the purpose of conferring a private benefit
   on a particular private party."); *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241
20 (1984) ("[T]he Court's cases have repeatedly stated that one person's property may
   not be taken for the benefit of another private person without a justifying public
21 purpose, even though compensation be paid.").  The CRRA confers no benefit on the
   public in general or the citizens of California in particular, but instead mandates
22 transfers to private individuals—the original artists—who need not be California
   citizens or residents.  Nor does the CRRA generally encourage the creation and sale
23 of art by up-and-coming artists.  Because the CRRA applies only to *resales* of art
   (and resales over $1,000 at that) the artists who benefit are overwhelmingly well
24 established and successful.  *See* Jeffrey C. Wu, *Art Resale Rights and the Art Resale*
   *Market: A Follow-Up Study*, 46 J. Copyright Soc'y U.S.A. 531, 550 (1999) ("[T]he
25 secondary market for contemporary art that does exist is highly skewed towards a
26 few established artists.").

27 [13]      A state law that confiscates private property cannot escape Takings Clause
28 scrutiny on the theory that the law itself redefines traditional property rights.

*(cont'd)*

1    Accordingly, it is well settled that the Fifth Amendment protects both real and
2  personal property, including monetary interests.  As the Supreme Court has recently
3  reiterated, the Takings Clause "protects 'private property' without any distinction
4  between different types," and nothing in the history of the Takings Clause "suggests
5  that personal property was any less protected against physical appropriation than real
6  property."  *Horne v. Dep't. of Agric.*, 135 S. Ct. 2419, 2426-27 (2015).  In particular,
7  the Court has "repeatedly found takings where the government . . . confiscat[ed]
8  financial obligations," including "cases in which [the Court] treated confiscations of
9  money as takings."  *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586,
10 2601 (2013) (citing *Phillips,* 524 U.S. 156 , and *Webb's*, 449 U.S. 155).

11   Applying these principles, it is clear that the CRRA confiscates private
12 property protected by the Fifth Amendment.  A work of fine art indisputably is
13 protected private property.  The owner thus enjoys all of the rights of ownership,
14 including the right to possess and use the artwork to the exclusion of others, as well
15 as the right to dispose of it.  *Phillips*, 524 U.S. at 167 ("the owner of a property
16 interest may dispose of all or part of that interest as he sees fit"); *see also Brotherton
17 v. Cleveland*, 923 F.2d 477, 481 (6th Cir. 1991) ("The 'bundle of rights' which have
18 been associated with property include the rights to possess, to use, to exclude, *to
19 profit, and to dispose*.").

20   The proceeds from a sale of an art work are also private property.  Indeed, the
21 expectation that one retains the proceeds generated from selling his or her wholly
22

23  _____
   *(cont'd from previous page)*
24 *Phillips,* 524 U.S. at 167 ("a State may not sidestep the Takings Clause by
   disavowing traditional property interests."); *Webb's Fabulous Pharmacies, Inc. v.*
25 *Beckwith*, 499 U.S. 155, 164 (1980) ("a State, by *ipse dixit*, may not transform
   private property into public property without compensation . . . This is the very kind
26 of thing that the Taking Clause of the Fifth Amendment was meant to prevent.");
   *Schneider I*, 151 F.3d at 1199 ("constitutionally protected property rights can—and
27 often do—exist *despite* statutes . . . that appear to deny their existence.") (emphasis
   in original).
28

AUCTION HOUSE DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS

owned property is even more firmly rooted than the protected expectation that "interest follows principal." *Phillips*, 524 U.S. at 165; *see also Webb's*, 449 U.S. at 162 (invalidating taking of interest on lawyer trust accounts).  Although the owner cannot be assured of the specific price for a later sale, the owner has a property interest in all proceeds actually produced from the sale.  *Phillips*, 524 U.S. at 168 ("[R]egardless of whether the owner of the principal has a constitutionally cognizable interest in the *anticipated* generation of interest by his funds, any interest that *does* accrue attaches as a property right incident to the ownership of the underlying principal.") (emphasis in original).

## B.   The CRRA Effects A *Per Se* Taking Of Private Property

At its core, the Fifth Amendment requires just compensation for a permanent physical invasion or occupation of private property, no matter how minor that invasion may be.  *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434-35 (1982) ("[W]hen the 'character of the governmental action' . . . is permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner.").  Unlike a law that restricts or regulates the *use* of private property, the forcible *transfer* of property from one private individual to another (or to the government) is equivalent to a forced physical occupation of property, which triggers the government's duty to pay just compensation.[14]  *See Horne*, 135 S. Ct. at 2429 (applying a *per se* takings analysis to regulations that required raisin growers to set aside a percentage of their crop for the government because "the raisin program requires physical surrender of

---

[14]     The Takings Clause applies equally to both a forcible transfer from one private party to another and a transfer to the government.  *See, e.g., Brown*, 538 U.S. at 224-25 (requirement that interest on trust accounts "be paid directly . . . to the Legal Foundation of Washington" was a *per se* taking); *Loretto*, 458 U.S. at 453-54 (*per se* taking where the government authorized a private cable television company to install cable equipment on private property).

1  the raisins and transfer of title, and the growers lose any right to control their
2  disposition"); *Brown*, 538 U.S. at 235 (because "the interest earned in the IOLTA
3  accounts is the private property of the owner of the principal . . . the transfer of the
4  interest to the Foundation here seems more akin to the occupation of a small amount
5  of rooftop space in *Loretto*."); *see also Schneider v. Cal. Dep't of Corr.*, 345 F.3d
6  716, 720 (9th Cir. 2003) ("*Schneider II*") ("In *Brown* . . . the Supreme Court further
7  clarified that *per se* takings analysis was the proper framework with which to
8  evaluate a law requiring that the interest on an individual's funds be transferred to a
9  different owner for a legitimate public use.").

10     Here, the CRRA mandates monetary payments from the proceeds of specific
11  art sales as a condition for the exercise of the owners' right to sell the artworks.  This
12  mandate violates the Takings Clause in several ways.

13     As the Supreme Court recently held in *Koontz*, "when the government
14  commands the relinquishment of funds linked to a specific, identifiable property
15  interest such as a bank account or parcel of real property, a '*per se* [takings]
16  approach' is the proper mode of analysis under the Court's precedent."  133 S. Ct. at
17  2600 (alterations in original); *see also id.* at 2599 (rejecting the argument that "an
18  obligation to spend money can never provide the basis for a takings claim").  Under
19  *Koontz*, a requirement for a monetary payment is a *per se* taking if either (i) the
20  payment obligation is directed at a specific identifiable fund, or (ii) the payment
21  must be made as a condition to the exercise of ownership rights over protected
22  property.  *See id.* at 2600.

23     In *Koontz*, the plaintiff challenged a government decision denying his land-use
24  permit application.  The permit was denied because the landowner would not agree
25  to pay for improvements on government owned land as a condition for receiving the
26  permit.  *Id.* at 2593.  The Florida Supreme Court held that a taking did not occur
27  because the subject of the exaction at issue was money, rather than a more tangible
28  interest in real property.  *Id.* at 2598.  The Supreme Court reversed, holding that "the

1    direct link between the government's demand" and the owner's exercise of his rights
2    over "a specific parcel of real property" meant that the demand for a monetary
3    payment was a *per se* taking.  *Id.* at 2599-600; *accord Levin v. City & Cty. of S.F.*, 71
4    F. Supp. 3d 1072, 1084 (N.D. Cal. 2014) (a San Francisco ordinance that required
5    property owners to make payments to their tenants as a condition of withdrawing
6    rent-controlled property from the rental market was an invalid *per se* taking).

7        Here, the CRRA both forcibly transfers specific, identifiable funds and
8    mandates a payment as a condition of the owner's exercise of rights over his
9    protected property.  *See Morseburg*, 621 F.2d at 976-79 ("the inescapable effect of
10   the [CRRA] is to burden [the seller] with an unbargained-for obligation to pay a
11   royalty to the creator of that work or the Arts Council upon resale.").  The proceeds
12   that sellers receive from the sale of specific art works are specific, identifiable
13   funds.[15]  In addition, one of the essential strands of property ownership is the right to
14   dispose of the property.  *See supra*, pp. 10, 25.  By mandating a monetary payment
15   as a condition of the owner's right to sell his art work, the CRRA effects a taking
16   without just compensation, in violation of the Takings Clause.  *Koontz*, 133 S. Ct. at
17   2599 ("monetary obligation [that] burdened petitioner's ownership of a specific
18   parcel of land" was a *per se* taking).

19       In this action, moreover, plaintiffs have not sued the owners of the art works.
20   Instead, they have sued the owners' agents to enforce the CRRA's mandate that,
21   instead of paying over the full amount of art sales to their principals, agents
22   "withhold 5 percent of the amount of the sale, locate the artist and pay the artist."

---

24   [15]   *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108-09
25   (11th Cir. 1998) (proceeds from sale of specific crops were a "specific, identifiable
     fund"); *Evergreen Marine Corp. v. Div. Sales, Inc.*, 2003 WL 1127905, at *9 (N.D.
26   Ill. March 12, 2003) ("the proceeds from the sale of the specific chattel" were a
     specified, identifiable fund); *Special Purpose Accounts Receivable Coop. Corp. v.*
27   *Prime One Capital Co., L.L.C.*, 125 F. Supp. 2d 1093, 1099-100 (S.D. Fla. 2000)
28   (proceeds from specific leases were "a specific identifiable fund").

1    Cal. Civil Code § 986(a)(1).   The paradigmatic example of a specific, identifiable
2    fund is money that an agent accepts on behalf of its principal.   *E.g., Gelow v. Central*
3    *Pac. Mortg. Corp.*, 656 F. Supp. 2d 1217, 1230 (E.D. Cal. 2009) ("A generalized
4    claim for money is not actionable as conversion.   If, however, 'there is a specific,
5    identifiable sum involved, such as where an agent accepts a sum of money to be paid
6    to another and fails to make the payment,' a cause of action for conversion exists."
7    (citing cases)).[16]   There is no question, therefore, that the funds at issue here are
8    specific, identifiable funds.[17]

9        It is also of no moment that the CRRA confiscates only five percent of the
10   proceeds from the resale of artwork.   A *per se* taking occurs whenever private
11   property is confiscated by the government, regardless of the size or amount taken.
12   *See, e.g.*, *Loretto*, 458 U.S. at 436 ("But constitutional protection for the rights of
13   private property cannot be made to depend on the size of the area permanently
14   occupied."); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning*
15   *Agency*, 535 U.S. 302, 322 (2002) ("When the government physically takes
16   possession of an interest in property for some public purpose, it has a categorical

17   ────────────────────

18   [16]    Funds an agent receives on behalf of its principal remain specific, identifiable
19   funds even if they are commingled in the agent's general accounts.   *Haigler v.*
     *Donnelly*, 18 Cal. 2d 674, 681 (1941) (Traynor, J.) ("[I]t is not necessary that each
20   coin or bill be earmarked.   When an agent is required to turn over to his principal a
     definite sum received by him on his principal's account," "a specific sum capable of
21   identification is involved"); *Gelow*, 656 F. Supp. 2d at 1231 (the "dispositive fact" is
     "not whether the funds were actually segregated, but whether there was an
22   identifiable amount to which [the principal was] legally entitled" (citing *Fischer v.*
     *Machado*, 50 Cal. App. 4th 1069, 1073-74 (1996)).

23
24   [17]    The CRRA itself treats the funds at issue as specific, identifiable funds.   In
     addition to the requirement that agents "withhold" the royalty payments from the
25   sale proceeds, the statute provides that "amounts of money held by any seller or
     agent for the payment of artists pursuant to this section shall be exempt from
26   enforcement of a money judgment by the creditors of the seller or agent."   Cal. Civ.
     Code § 986(a)(6).   Unless the royalty payment funds can be specifically identified,
27   the provision exempting them from judgment enforcement by other parties makes no
28   sense.

─────────────────────────────────────

29

1    duty to compensate the former owner, regardless of whether the interest that is taken

2    constitutes an entire parcel or merely a part thereof.").  Moreover, five percent of the

3    *gross proceeds*—not profit—from the resale of a work of art is a substantial sum in

4    many instances; and given the statute's $1,000 threshold, it is always at least $50.

5    Indeed, unless a piece of artwork is sold for more than 105% of its purchase price,

6    the CRRA not only confiscates the seller's *entire* profit, but it also leaves the seller

7    with less money than was originally paid for the artwork.

8        Finally, the monetary payment required by the CRRA is also plainly

9    distinguishable from the types of payment obligations that have been upheld.  For

10   example, the CRRA does not impose "user fees" for services provided by the

11   government.  Because CRRA royalties are paid to private parties, they have nothing

12   to do with funding government services.  *See, e.g., Phillips*, 524 U.S. at 171

13   (confiscation of interest on funds in lawyer trust accounts could not be justified as

14   user fees because the funds were held and managed by private parties; distinguishing

15   *United States v. Sperry Corp.*, 493 U.S. 52, 60 (1989), which upheld user fees "on

16   those utilizing the Iran-United States Claims Tribunal").[18]

17       Nor can CRRA royalties be justified on the ground that selling art work is a

18   special enterprise on which such burdens may be imposed.  As the Supreme Court

19   recently held in *Horne*, 135 S. Ct. at 2440, a requirement to disclose health, safety

20   and environmental information was properly upheld in *Ruckelshaus v. Monsanto Co.*,

21   467 U.S. 986 (1984), as a condition of receiving the "valuable governmental benefit"

22   of a permit to sell dangerous pesticides.  Being allowed to sell raisins, on the other

23   hand, is "not a special governmental benefit that the Government may hold hostage,

24   to be ransomed by the waiver of constitutional protection."  *Horne*, 135 S. Ct. at

25

---

26   [18]   Because CRRA royalties are paid to private parties, rather than the
     government, they also cannot be justified as taxes.  As the Ninth Circuit has already
27   held in this case, the CRRA "does not impose a tax."  *Sam Francis Found.*, 784 F.3d
     at 1324.
28

1   2430.  Likewise, being allowed to sell works of fine art is not a special government

2   benefit that can be held hostage to five percent payments.

3        In sum, the CRRA effects a direct appropriation of private property from one

4   individual to another without compensation.   The Supreme Court has long

5   recognized this as among the core concerns implicated by the Fifth Amendment: "'It

6   is against all reason and justice' to presume that the legislature has been entrusted

7   with the power to enact 'a law that takes *property* from A and gives it to B.'" *E.*

8   *Enters. v. Apfel*, 524 U.S. 498, 523 (1998) (quoting *Calder v. Bull*, 3 U.S. 386, 388

9   (1798) (Chase, J.) (emphasis in original)).  Nor is the government "absolved of its

10  constitutional duty to pay 'just compensation' to an individual whose property has

11  been taken for public use merely because the same government has benevolently

12  conferred value on another." *Schneider II*, 345 F.3d at 721.  Because the CRRA

13  takes five percent of the value of a resold work of art, and transfers it to another

14  person for his sole benefit without any compensation, the CRRA violates the Fifth

15  Amendment and the California Constitution.

16  **III.   PLAINTIFFS SEEK RELIEF PRECLUDED AS A MATTER OF LAW**

17       Although Plaintiffs seek punitive damages for Defendants' alleged

18  "intentional election to flout the law" (SoCompl. ¶¶ 1, 32; ChCompl. ¶¶ 1, 33), there

19  is no basis to award punitive damages under the law governing either of the claims

20  Plaintiffs have asserted.  "The Ninth Circuit has implicitly authorized the use of a

21  12(b)(6) motion to challenge a prayer for damages precluded by law," *Danielson v.*

22  *Wells Fargo Bank*, 2011 WL 4480849, at *3 (C.D. Cal. Sept. 26, 2011) (citing

23  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)), and courts

24  in this district routinely reject requests for damages the law does not authorize.

25  Plaintiffs' request for punitive damages must thus be dismissed.

26       **A.   Punitive Damages Are Not Available Under The UCL**

27       It is well-settled that Plaintiffs "may not receive damages, much less *treble*

28  damages" under the UCL.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.

31

4th 163, 179 (1999) (emphasis in original).  "In a private unfair competition law action, the remedies are generally limited to injunctive relief and restitution," not "damages, including punitive damages and increased or enhanced damages." *Clark v. Superior Court*, 50 Cal. 4th 605, 610 (2010).[19] Acknowledging this settled law, Plaintiffs do not list punitive damages as relief they seek under the UCL.  (SoCompl ¶ 46; ChCompl. ¶ 47.)  Plaintiffs cannot pursue punitive damages under their UCL claim.

## B.   Punitive Damages Are Not Recoverable Under The CRRA

### 1.   The CRRA Does Not Provide For Punitive Damages

Courts "ordinarily resist reading words or elements into a statute that do not appear on its face."  *Dean v. United States*, 129 S. Ct. 1849, 1853 (2009); *Pac. Coast Fed'n of Fisherman's Ass'ns v. Blank*, 693 F.3d 1084, 1095 (9th Cir. 2012) (same). In construing statutes, a court's "office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does;" the court "may not rewrite the statute to conform to an assumed intention that does not appear in its language." *Vasquez v. State*, 45 Cal. 4th 243, 253 (2008); *Doe v. City of L.A.*, 42 Cal. 4th 531, 545 (2007) (same).[20]

On its face, there is no provision for punitive damages in Section 986, which says only that "the artist may bring an action for damages within three years" and provides for an award of "reasonable attorney fees" to the "prevailing party."  Cal.

---

[19]    *See also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 1148 (2003) ("[w]hile the scope of conduct covered by the UCL is broad, its remedies are limited . . . [in that] damages cannot be recovered" and "[a] court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices"); Cal. Bus. & Prof. Code § 17203; *Madrigal v. Tommy Bahama Grp., Inc.,* 2010 WL 4384235, at *8-9 (C.D. Cal. Oct. 18, 2010) (dismissing claims for punitive damages under UCL); *Hadjavi v. CVS Pharmacy, Inc.,* 2010 WL 7695383, at *3-4 (C.D. Cal. Sept. 22, 2010) (same).

[20]    When interpreting a California statute, federal courts apply California's rules of statutory construction. *Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008); *In re Kolb*, 326 F.3d 1030, 1037 (9th Cir. 2003).

Civ. Code § 986(a)(3).   Because the CRRA creates new rights not previously existing at common law, and provides only for compensatory damages and not punitive damages, plaintiffs may seek only compensatory damages.   *See Brewer v. Premier Golf Props.*, 168 Cal. App. 4th 1243, 1252 (2008) ("[W]here a statute creates new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate.").[21]

Even California's catch-all statutory provision for punitive damages, California Civil Code section 3294, cannot save Plaintiffs' claim for punitive damages. "Where a right is created by statute and the statute does not expressly permit punitive damages, punitive damages under California Civil Code section 3294 are *not* available." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007).   It is indisputable that, until 1976, an artist's right to collect a resale royalty was not recognized under California law (or anywhere in the United States).   The remedies in the CRRA are thus exclusive and do *not* include punitive damages.[22]

And Plaintiffs cannot argue that the CRRA's provision for damages is inadequate, because courts routinely reject claims that "the statutory penalties . . . are

---

[21]    *See also De Anza Santa Cruz Mobile Estates Homeowners Ass'n v. De Anza Santa Cruz Mobile Estates*, 94 Cal. App. 4th 890, 916 (2001) (reversing punitive damages award where "the only basis for liability" was a violation of "section 798.41, [so] the penalty provided in Civil Code section 798.86 was the exclusive penalty available"); *Korn v. Polo Ralph Lauren Corp.*, 644 F. Supp. 2d 1212, 1219 (E.D. Cal. 2008) (striking citizen's claim for injunctive relief where Song Beverly Act created new rights and allowed only the government to sue for injunctive relief).

[22]    *See also Bickley v. Schneider Nat'l, Inc.*, 2009 WL 5841196, at *1 (N.D. Cal. Feb. 11, 2009) (same, collecting cases); *Campbell v. PricewaterhouseCoopers*, 2008 WL 3836972, at *7 (E.D. Cal. Aug. 14, 2008) (no punitive damages where plaintiffs' claims "were not available at common law and accordingly the statutory remedy is exclusive"); *Woo v. Home Loan Group, L.P.*,  2007 WL 6624925, at *6 (S.D. Cal. July 27, 2007) ("right to reimbursement [] is a new right, not existing in the common law, and therefore liability under section 2802 is limited to that expressed in the statute").

not substantial enough . . . to deter [defendants] or others from committing the same acts in the future." *Wal-Mart*, 505 F. Supp. 2d at 621 (collecting cases).[23] Accordingly, because the plain terms of section 986 do not encompass punitive damages, Plaintiffs' claim for punitive damages must be dismissed as a matter of law.

### 2. The Legislative History Shows That Punitive Damages Are Not An Available Remedy Under The CRRA

Where, as here, a sought-after remedy "is not expressly authorized by the statute," the court can look to the legislative history to "determine whether the Legislature intended to authorize such a remedy." *Korea Supply*, 29 Cal. 4th at 1146. Here, the CRRA's legislative history shows that punitive damages were never authorized nor intended by the Legislature.

The CRRA provision allowing recovery of reasonable attorneys' fees was added in 1982 in an amendment proposed by the CRRA's author, Senator Sieroty. (SoECF No. 19-14/ChECF No. 16-2 at 63-66.)[24] Recognizing that "[o]ne of the principal weaknesses of the Resale Royalties Act is that it provides no state enforcement mechanism or criminal penalties," the amendment "authorize[d] an award for reasonable attorneys' fees to the prevailing party in an action brought by an artist for nonpayment of royalties" since "[c]urrent law does not provide for attorneys' fees in such cases." (SoECF No. 19-15/ChECF No. 16-2 at 67-70; SoECF

---

[23]   *See also Doran v. Embassy Suites Hotel*, 2002 WL 1968166, at *3 (N.D. Cal. Aug. 26, 2002) (rejecting request for punitive damages under section 3294 because "the Legislature took the importance of disability rights into account when it crafted" remedies of actual damages and attorney's fees but "evidently concluded that *the extensive remedies that it enacted were adequate for enforcement of this important law*"); *accord De Anza,* 94 Cal. App. 4th at 916 (statutory remedy was not "inadequate" where the statute authorized, *inter alia*, recovery of actual damages, costs and attorney's fees).

[24]   This Court has taken "judicial notice of the legislative history of the CRRA, including . . . prior versions of the bill, amendments, committee reports, and the written recommendations of the legislative counsel." (SoECF No. 43/ChECF No. 38 at 14 n.6.)

No. 19-16/ChECF No. 16-2 at 71.)  "The purpose of the bill is to strengthen the Resale Royalties Act by providing for attorney fees, assignment of rights and inheritability." (SoECF No. 19-19/ChECF No. 16-2 at 91.)

Given the rationale for adopting the attorney fees provision—to "strengthen" the CRRA by providing a remedy not currently available under the statute—it is highly significant that, in the initial discussions of potential amendments in 1982, Senator Sieroty proposed both the attorney fees provision *and* the "awarding of *punitive damages*" as remedies, suggesting that "[f]or a willful failure by a reseller to pay a royalty, an artist may be awarded *a treble royalty payment*" and "[i]f a judge finds that a pattern of avoidance of obligations under this law exists, *he can assess punitive damages*."  (SoECF No. 19-11/ChECF No. 16-2 at 59; SoECF 19-12/ChECF No. 16-2 at 61; *see also* SoECF 19-13/ChECF No. 16-2 at 62 (California Arts Council memo noting punitive damages among proposed amendments).)  This history confirms that when the CRRA was enacted *without* a punitive damages provision, the Legislature did not intend to make punitive damages recoverable under the Act—if the Legislature had so intended, Senator Sieroty's proposal to add such damages as a potential *further* enforcement mechanism under the CRRA would have been unnecessary.  It makes no sense that the CRRA's author would propose adding a remedy already available under the existing statute.  Thus, punitive damages are inconsistent with the legislative history and intent of the CRRA.

### 3.   The Express Inclusion Of A Punitive Damages Remedy In A Contemporary Artist Protection Statute Shows That Punitive Damages Are Not Authorized Under The CRRA

It is also apparent that punitive damages are not available under the CRRA because, to paraphrase the California Supreme Court, the Legislature "certainly knows how to impose [punitive damages] when it wants to, having established" penalties of punitive damages in another statute also ostensibly extending protection to artists.  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1107 (2007) (citing use of the word "penalty" in Labor Code to reject characterization of

1  mandated payment as a "penalty").[25]  "It is hornbook law that where [the Legislature]
2  has carefully employed a term in one place and excluded it in another, it should not
3  be implied where excluded."  *Wells Fargo Bank v. Superior Court*, 53 Cal. 3d 1082,
4  1096-97 (1991).[26] This rule applies even if the court is comparing two different but
5  related statutes.  *People v. Goodloe*, 37 Cal. App. 4th 485, 491 (1995) ("When a
6  particular provision appears in one statute but is omitted from a related statute, the
7  most obvious conclusion from the omission is that a different legislative intent
8  existed"); *Anthony v. Superior Court*, 109 Cal. App. 3d 346, 356 (1980) ("omission
9  of [a] provision from a similar statute concerning a related subject . . . is significant
10  to show that a different intention existed.").[27]

11      The California Art Preservation Act ("CAPA") was enacted in 1979, three
12  years *after* the CRRA was enacted, but three years *before* the CRRA was amended as
13  described above.  Codified as California Civil Code section 987, and appearing
14  immediately after the CRRA in the same chapter governing fine art, the CAPA

_____

16  [25]   *See also Yeager v. Blue Cross of Cal.*, 175 Cal. App. 4th 1098, 1103 (2009)
17  ("The Legislature's refusal to dictate the amount of coverage and its cost is not
   ambiguity—it is silence" and a court "may not make a silent statute speak by
18  inserting language the Legislature did not put in the legislation"); *Maita Distribs.,
   Inc. of San Mateo v. DBI Beverage, Inc.*, 667 F. Supp. 2d 1140, 1147 (N.D. Cal.
19  2009) ("Had the legislature intended to grant a right to cancel, it easily could have
   done so. It did not, however, and the court cannot read into the statute words that are
20  not there.").

21  [26]   *See also Cal. Corr. Peace Officers' Ass'n v. State*, 188 Cal. App. 4th 646, 654
   (2010); *Cummings v. Stanley*, 177 Cal. App. 4th 493, 509 (2009).

22  [27]   *Accord People v. Valenzuela*, 92 Cal. App. 4th 768, 776-78 (2001) (refusing
23  to infer knowledge requirement in statute because "the Legislature carefully
   delineated instances in which a specific criminal intent is required for conviction");
24  *Yeager*, 175 Cal. App. 4th at 1103-04 (comparing different acts found within the
   same Article); *People v. Galvan*, 168 Cal. App. 4th 846, 854 (2008) (presuming "the
25  Legislature, when enacting a statute, is aware of related code sections and intends to
26  maintain a consistent body of rules"); *People ex rel. Gwinn v. Kothari*, 83 Cal. App.
   4th 759, 770 (2000) ("If the Legislature has included one provision in one part of a
27  statute but excluded it from another, a court should not imply the omitted provision
28  in the part of the statute that does not contain it.").

1  expressly addresses punitive damages.   Specifically, the CAPA prohibits "the
2  intentional commission of, any physical defacement, mutilation, alteration, or
3  destruction of a work of fine art" and allows the artist to pursue various remedies,
4  including injunctive relief, actual damages, attorneys' fees and punitive damages.
5  Cal. Civ. Code § 987(c)(1) & (e)(1)-(5).[28]  The inclusion of this express authorization
6  for punitive damages in the CAPA, a related statute also designed to protect artists,
7  demonstrates that no such remedy is available under the CRRA.

8      Further, it is telling that a punitive damages award under the CAPA does *not*
9  inure to the artist—instead, the law requires that if punitive damages are awarded,
10 the court selects an organization "involving the fine arts in California to receive any
11 punitive damages." Cal Civ. Code § 987(e)(3).   It defies reason to posit that
12 California law allows an artist to recover punitive damages for the relatively
13 mundane failure of a seller to pay a 5% royalty when said artist's work is resold,
14 when that same artist cannot personally recover any punitive damages under
15 California law *when her work is maliciously destroyed by another*—a far graver and
16 more egregious harm to the artist and the public interest.   *Id.* § 987(a).   Thus,
17 allowing an artist to recover punitive damages under section 986 simply cannot be
18 reconciled with section 987.

19 **IV.    THE CLAIMS OF THE ESTATE OF ROBERT GRAHAM FAIL**

20     The claims of the Estate of Robert Graham must be dismissed because "an
21 estate or trust is *not* a legal entity and has no capacity to sue." *Estate of Migliaccio v.*
22 *Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006) (emphasis
23 in original); *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1390 (2011) ("A probate or

---

25 [28]   *See also Lubner v. City of L.A.*, 45 Cal. App. 4th 525, 528-30 (1996) (refusing
26 to allow recovery for damage to plaintiff artists' reputation under CAPA where "the
   plain language of the statute does not support the [plaintiffs], and . . . the Legislature
27 could not possibly have left out such a remedy" because "where a statute . . .
   provides a comprehensive and detailed remedial scheme for its enforcement, the
28 statutory remedy is exclusive").

1    trust estate is not a legal entity; it is simply a collection of assets and liabilities.  As

2    such, it has no capacity to sue or be sued, or to defend an action."); *In re Peterson*,

3    156 Cal. App. 4th 676, 679 n.1 (2007) (same).

4         Plaintiffs will likely contend that the CRRA grants rights to the "heirs,

5    legatees or personal representative" of a deceased artist, and they have alleged that

6    the Graham estate is "the heir, legatee and/or personal representative of artist Robert

7    Graham." (SoCompl. ¶ 2; ChCompl. ¶ 3.)  Plaintiffs' allegation, however, is a legal

8    conclusion that the Court should not accept.  *Conn. Gen. Life Ins. Co. v. La Peer*

9    *Surgery Ctr. LLC*, 2014 WL 961806, at *4 (C.D. Cal. Mar. 12, 2014) (dismissing

10   complaint which alleged that CIGNA was a fiduciary; because "CIGNA's status as a

11   fiduciary is not a question of fact, but instead a question of law," "the Court need not

12   accept as true CIGNA's bare assertion that it is a fiduciary").  Plaintiffs' allegation is

13   also obviously incorrect.  The terms "heir," "legatee," and "personal representative"

14   are legal terms, which refer to persons who have rights or duties regarding an estate;

15   not the estate itself.  As noted above, an estate is "simply a collection of assets and

16   liabilities," which "has no capacity to sue or be sued." *Smith*, 199 Cal. App. 4th at

17   1390.  Instead, a personal representative must appear for the estate.  *Id.* at 1390-91;

18   *see also In re Peterson*, 156 Cal. App. 4th at 679 n.1 ("Any litigation must be

19   maintained by, or against, the executor or administrator of the estate.").  In short, the

20   claims of the Estate of Graham should be dismissed.

21   **V.    PLAINTIFFS' PLEADING OF THEIR CLAIMS IS INSUFFICIENT**

22        In addition to the substantive grounds for dismissal of Plaintiffs' claims,

23   Plaintiffs' complaints are insufficiently pled and should be dismissed for two reasons.

24   *First*, Plaintiffs plead only the legal elements of their claims in conclusory terms (*i.e.*,

25   that Defendants conducted sales for which royalties under the CRRA were required),

26   and fail to identify any specific transactions for which they are allegedly owed

27   royalties.  *Second*, Plaintiffs have tried to rescue claims that are time-barred by

28

AUCTION HOUSE DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS

1  asserting fraudulent concealment, but their fraudulent concealment theory is wrong

2  as a matter of law, and they have failed to plead the requisite allegations concerning

3  when and how they discovered the purported concealment and their alleged claims.

### A.   Plaintiffs Have Not Alleged Facts To Support Their Claims

5  To comply with the requirements of Rule 8, "each plaintiff must plead a short

6  and plain statement of the elements of his or her claim, identifying the transaction or

7  occurrence giving rise to the claim and the elements of the prima facie case."

8  *Bautista v. L.A. Cty.*, 216 F.3d 837, 840 (9th Cir. 2000).   Here, Plaintiffs fail to

9  satisfy even those basic requirements because they have not identified any

10  "transaction or occurrence giving rise to the claim" of any of the Plaintiffs.  Plaintiffs

11  allege only that, "[o]n information and belief," "they are each owed Royalties in

12  connection with the sale of works of Fine Art" by Defendants.  (SoCompl. ¶ 14;

13  ChCompl. ¶ 15.)   No specific sales are identified.  Instead, Plaintiffs plead that,

14  because of Defendants' "acts of concealment, Plaintiffs at this time can only surmise

15  the total amount of Royalties owed to them." (SoCompl. ¶ 14; ChCompl. ¶ 15.)

16  Because Plaintiffs have not identified any specific sales that give rise to their

17  individual claims, their complaints are insufficient.  *Bautista*, 216 F.3d at 840

18  (complaint which pled "on behalf of all plaintiffs collectively" that defendant

19  discriminated against them was insufficient, since it did not allege the "operative

20  facts giving rise to an enforceable right in favor of [each] plaintiff").[29]  Indeed,

21  

_____

22  [29]   *Accord Flores v. Cty. of L.A.*, 758 F.3d 1154, 1160 (9th Cir. 2014)

23  (complaint's sole factual allegation regarding omission of language in manual was
insufficient to allege failure to train); *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d

24  939, 954-55 (9th Cir. 2011) (en banc) (complaint alleging claims under the
Americans with Disabilities Act was insufficient since it failed to allege any specific

25  instance where plaintiff was denied access); *Wood v. City of San Diego*, 678 F.3d
1075, 1081 (9th Cir. 2012) (affirming dismissal of complaint for discrimination

26  where plaintiff failed to specifically allege discriminatory intent); *Williams v. Lane*,
2015 WL 1541371, at *3 (C.D. Cal. Feb. 27, 2015) *report and recommendation*

27  *adopted,* 2015 WL 1549104 (C.D. Cal. Apr. 7, 2015) ("The court may not supply

28  essential elements of the claim that were not initially pled."); *Richtek Tech. Corp. v.*

*(cont'd)*

39

1   Plaintiffs identify **no basis** for their individual claims.  They plead those claims "on
2   information and belief," but do not identify any source for their information and
3   belief.  And they affirmatively allege that they have no source other than "surmise"
4   regarding the specifics of their individual claims.  (SoCompl. ¶ 15; ChCompl. ¶ 14.)

5       Plaintiffs' claims are not rescued by their class action allegations.  A named
6   plaintiff in a putative class action must plead a sufficient individual claim and
7   establish personal standing.  *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997)
8   ("[T]he fact that Plaintiffs filed their complaint as a class action is of no moment. . . .
9   If the litigant fails to establish standing, he may not seek relief on behalf of himself
10  or any other member of the class.").[30]  Here, because Plaintiffs have not alleged facts
11  to support their individual claims, they have not established their standing and their
12  complaints must be dismissed.

13          **B.    Plaintiffs Fail To Establish Their**
                   **Facially Time-Barred Claims Are Viable**
14

15      An action for damages under the CRRA must be brought "within three years
16  after the date of sale or one year after the discovery of the sale, whichever is longer."
17  Cal. Civ. Code § 986(a)(3).  Here, Plaintiffs seek to assert both: (1) claims based on
18  sales in the three years before these actions were filed; and (2) older claims,

_____
19  *(cont'd from previous page)*
20  *UPI Semiconductor Corp.*, 2011 WL 166292, at *3 (N.D. Cal. Jan. 19, 2011)
    ("formulaic statements" that defendants had infringed patents were insufficient, since
21  they did "not identify any acts of alleged infringement").

22  [30]    *Accord Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th
    Cir. 2003) ("if none of the named plaintiffs purporting to represent a class establishes
23  the requisite of a case or controversy with the defendants, none may seek relief on
    behalf of himself or any other member of the class"); *Hawkins v. Comparet-Cassani*,
24  251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class
    alleging constitutional claims that the named plaintiff does not have standing to
25  raise."); *Burton v. Time Warner Cable Inc.*, 2013 WL 3337784, at *8 (C.D. Cal. Mar.
26  20, 2013) (granting motion to dismiss because plaintiff "does not put forth facts
    showing that he, or any other class member, suffered from the inability to make an
27  informed decision" and "[i]nstead, he alleges that all class members suffer this
    generalized injury").
28

apparently extending back to when the CRRA first became effective in 1977.  With respect to the older claims, Plaintiffs have not only failed to identify the transactions that give rise to their claims, but they have also failed to allege facts required to show that their claims are not barred by the statute of limitations.  Indeed, Plaintiffs' refusal to amend their complaints, despite the Ninth Circuit's ruling dismissing their extraterritorial claims, has left them in the unenviable position of establishing that supposedly they had no way of knowing if the Auction Houses were holding *public* auctions in California or of identifying the works that were offered for sale in those auctions.

It is settled that "[w]here the running of the statute of limitations appears on the face of a complaint, a plaintiff must allege facts to support a *plausible* claim that the equitable tolling doctrine applies in order to survive a motion to dismiss brought under Rule 12(b)(6)."  *Singer ex rel. Singer v. Paul Revere Life Ins. Co.*, 2015 WL 3970284, at *4 (C.D. Cal. June 30, 2015); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions . . . will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement").[31]

Further, Federal Rule of Civil Procedure 9(b) requires that "[w]hen a plaintiff relies on a theory of fraudulent concealment . . . to save a cause of action that otherwise appears on its face to be time-barred, he or she must *specifically plead facts* which, if proved, would support the theory."  *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131, 1132-33 (C.D. Cal. 2010) (collecting authority).  To plead "fraudulent concealment, the complaint must show: (1) when the fraud was

---

[31]    *Accord Marschall v. Caine & Weiner Co.*, 2011 WL 2516502, at *3 (C.D. Cal. June 23, 2011) (dismissing complaint where allegations regarding the running of the statute of limitations were ambiguous); *McNeil v. Home Budget Loans*,  2010 WL 1999580, at *2 (C.D. Cal. May 13, 2010) ("When the face of the complaint reveals that a claim is barred by the applicable statute of limitations, the plaintiff will fail to state a claim."); *Abelyan v. OneWest Bank*, 2009 WL 3784610, at *3 (C.D. Cal. Nov. 9, 2009) ("To toll the statute of limitations, plaintiffs must plead fraudulent concealment with particularity.").

1  discovered; (2) the circumstances under which it was discovered; and (3) that the

2  plaintiff was not at fault for failing to discover it or had no actual or presumptive

3  knowledge of facts sufficient to put him on inquiry." *Platt Elec. Supply, Inc. v. Eoff*

4  *Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008).[32]

5      "The burden of alleging facts which would give rise to tolling falls upon the

6  plaintiff.  That burden does not arise only after a motion to dismiss; rather, the

7  plaintiff must plead with particularity the circumstances surrounding the

8  concealment and state facts showing his due diligence in trying to uncover the facts."

9  *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).  Complaints that invoke the

10  discovery rule, but fail to include such allegations, must be dismissed.  *Yumul*, 733 F.

11  Supp. 2d at 1131-33 (class action complaint dismissed, *inter alia*, because plaintiff

12  "has not alleged the time and manner of her discovery of the facts giving rise to her

13  claims").[33]

14      Here, Plaintiffs attempt to assert a class period dating back to 1977, long

15  before the three-year statute of limitations.  (SoCompl. ¶¶ 9, 12; ChCompl. ¶¶ 10, 13.)

16  Because the running of the statute of limitations appears on the face of the complaint,

17  Plaintiffs must therefore allege specific facts to support a *plausible* claim that the

18

19  ───────────────

20  [32]    In the statute of limitations context, "fraudulent concealment" is synonymous
with "equitable estoppel," and it refers to any active misconduct by the defendant

21  that prevents the plaintiff from filing a timely action.  *See Guerrero v. Gates*, 442
F.3d 697, 706 (9th Cir. 2006) ("Equitable estoppel, also termed fraudulent

22  concealment, halts the statute of limitations when there is active conduct by a
defendant, above and beyond the wrongdoing upon which the plaintiff's claim is

23  filed, to prevent the plaintiff from suing in time.").

24  [33]    *Accord Keilholtz v. Lennox Hearth Prods. Inc.*, 2009 WL 2905960, at *5 (N.D.
Cal. Sept. 8, 2009) (complaint dismissed because it "fails to allege when the fraud

25  was discovered by class members who have time-barred claims, [and] the

26  circumstances under which it was discovered [so] Plaintiffs therefore fail to allege
sufficient facts to invoke tolling based on fraudulent concealment."); *McKelvey v.*

27  *Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999) (complaints dismissed

28  because "none of them disclose the time and manner of discovery by any plaintiff").

1    equitable tolling doctrine applies in order to survive Defendants' motion to dismiss.
2    *Hinton*, 5 F.3d at 395; *Singer*, 2015 WL 3970284, at *4.

3        Yet Plaintiffs fail to allege anything plausible, let alone specific, which could
4    support a claim that the statute of limitations should be tolled.   For example,
5    Plaintiffs fail to plead when or how they discovered either the existence of their
6    claims or the Auction Houses' alleged concealment —or why Plaintiffs did not assert
7    those claims within three years of the sales.   In the absence of any allegation of when
8    and how Plaintiffs learned about specific transactions, it is apparent that Plaintiffs do
9    not actually know if they have any claims and have instead sued to find out *whether*
10   such claims exist.[34]   If it were sufficient for Plaintiffs to plead time-barred claims
11   without identifying or knowing about any specific transactions, then Plaintiffs could
12   have filed the exact same non-specific complaint at any time since 1977. This means
13   that either (1) Plaintiffs' pleading is insufficient because it fails to allege how they
14   learned about specific transactions, or (2) if Plaintiffs' non-specific pleading is
15   sufficient, then their time-barred claims must be dismissed, because Plaintiffs cannot
16   possibly explain why they did not file the same allegations before the statute of
17   limitations expired. In short, Plaintiffs cannot have it both ways.

18       Plaintiffs' explanation of why they did not sue earlier is also plainly
19   insufficient.   Plaintiffs allege that they could not discover specific claims (which they
20   still have not discovered or identified) because Sotheby's and Christie's "custom and
21   practice is to conceal . . . the fact that a sale took place in California, from
22   communications with the public concerning auctions and sales of Fine Art", thus
23   preventing Plaintiffs from learning about sales that entitled plaintiffs to royalties.
24   (SoCompl. ¶¶ 12-13; ChCompl. ¶¶ 13-14).

25   _____

26   [34]   It is fundamental that "discovery is authorized solely for parties to develop the
27   facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in
     order to find out whether he has such a claim."  *Podany v. Robertson Stephens, Inc.*,
28   350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004).

1    Plaintiffs allege that "during the class periods" (*i.e.*, since 1977), Sotheby's
2  and Christie's auction catalogs did not identify lots "for which the artist will be
3  entitled to the Royalty due under California law" and that the Auction Houses "never
4  disclosed in any auction catalog or other writing to the Artist that . . . the sale took
5  place in California" (SoCompl. ¶¶ 9, 12, 16, ChCompl. ¶¶ 10, 13, 17), but do not
6  detail any efforts to try to uncover the facts of the location of the sale or what was
7  sold. Nor could they, because it defies credulity that Sotheby's and Christie's
8  auction catalogs and advertisements would "conceal" salient details like what pieces
9  were on the auction block or where the auction was taking place—in effect,
10 preventing potential bidders from participating in the auction and thus frustrating the
11 very purpose of an auction. On their face, Plaintiffs' fraudulent concealment
12 allegations are patently implausible and devoid of the requisite particularity,
13 mandating dismissal here.

14   Plaintiffs' reliance on the Auction Houses' purported (and weirdly self-
15 defeating) nondisclosure of what was sold and where it was sold is flawed for
16 another reason. Unless a defendant owes a fiduciary duty to the plaintiff,
17 nondisclosure is *not* fraudulent concealment. *Thorman v. Am. Seafoods Co.*, 421
18 F.3d 1090, 1091-92 (9th Cir. 2005) ("fraudulent concealment . . . requires proof of
19 'affirmative conduct upon the part of [the defendant]' . . ., as passive concealment is
20 insufficient for a court to grant equitable tolling 'unless the defendant had a fiduciary
21 duty to disclose information to the plaintiff.'").[35] It is settled law that an auctioneer
22 owes a fiduciary duty only to the auction consignor. *E.g., T.T. Exclusive Cars, Inc. v.*

23

24 _____

25   [35]   *Accord Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th
   Cir. 1978) ("Silence or passive conduct of the defendant is not deemed fraudulent,
26 unless the relationship of the parties imposes a duty upon the defendant to make
   disclosure."); *Lauter v. Anoufrieva*, 2010 WL 3504745, at *22 (C.D. Cal. July 14,
27 2010) ("Unless a defendant has a fiduciary duty to disclose information to the
   plaintiff, passive concealment is insufficient for a court to grant equitable tolling.").
28

*Christie's Inc.*, 1996 WL 737204, at *4 (S.D.N.Y. Dec. 24, 1996) ("as an agent for the consignor," an auctioneer's fiduciary duties "are owed to [the consignor]").

Plaintiffs cannot plausibly argue that auctioneers owe them a duty of disclosure merely because the CRRA requires royalty payments.  That argument incorrectly equates the alleged misconduct in not paying the royalty with fraudulent concealment, which "requires active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed,* to prevent the plaintiff from suing in time."  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000) *overruled on other grounds by Socop–Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001) (en banc); *accord Guerrero*, 442 F.3d at 707; *Sadsad v. Wash. Mut. Bank F.A.*, 2009 WL 4349801, at *2 (C.D. Cal. Nov. 25, 2009).

Here, Plaintiffs have not and cannot allege that defendants owed them any fiduciary duty or other duty of disclosure because no such duty exists.  Plaintiffs' fraudulent concealment theory lacks any basis in the law, and their untimely claims should be dismissed.

## CONCLUSION

For the reasons discussed above, the Court should dismiss Plaintiffs' complaints with prejudice.

Dated:    February 1, 2016          By:   _/s/ Jason D. Russell_
                                              Jason D. Russell

JASON D. RUSSELL (CA SBN 169219)
jason.russell@skadden.com
HILLARY A. HAMILTON (CA SBN 218233)
hillary.hamilton@skadden.com
ANGELA COLT (CA SBN 286275)
angela.colt@skadden.com
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Defendant CHRISTIE'S, INC.

AUCTION HOUSE DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS

1

2

By:   /s/ Paul T. Friedman
         Paul T. Friedman

3

4

5

6

7

PAUL T. FRIEDMAN (CA SBN 98381)
PFriedman@mofo.com
DEANNE E. MAYNARD (*Pro Hac Vice*)
DMaynard@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile:  415.268.7522

8

9

10

11

12

13

STEVEN A. REISS (*Pro Hac Vice*)
steven.reiss@weil.com
HOWARD B. COMET (*Pro Hac Vice*)
howard.comet@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: 212.310.8000
Facsimile:  212.310.8007
Attorneys for Defendant SOTHEBY'S, INC.

14

15

16

All other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

17

18

19

20

21

22

23

24

25

26

27

28

46